**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

LYNN M. SUTHERLAND

vs. C. A. NO.: 05-450 S

HYC, INC. and JEFFREY BARROWS

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff suffered a severe crush injury to her right, dominant, hand, including the amputation of her right ring finger, when her hand was caught in a deck-mounted turning block during a charter sail on August 21, 2004 in Newport Harbor, aboard defendants' twelve-meter racing yacht Heritage. Plaintiff was injured because defendants negligently failed to warn the charter passengers about the turning blocks and to keep their hands clear of them. Plaintiff, who is not a sailor and did not know how sailboats are operated or what turning blocks were, unknowingly had her hand on a starboard-side turning block and it was mangled in the block when a sail line was pulled through the block during a turning maneuver. She brings this claim for negligence under the general maritime law and seeks damages for permanent disability and disfigurement, pain and suffering, medical expenses, and past and future lost earnings.

Defendant HYC, Inc. is the owner of Heritage. Defendant Jeffrey Barrows manages the business of HYC, is the founder and only officer and director of HYC, and often serves as the captain of Heritage during charter sails. He was acting as captain of Heritage at the time plaintiff was injured.

## A. PLAINTIFF'S CLAIMS

Plaintiff expects to prove the following facts in support of her claim that defendants acted negligently and caused her to suffer a severe and permanent injury to her right hand. Pursuant to local practice, plaintiff is filing her list of witnesses and exhibits conventionally and not electronically, separately from this Pretrial Memorandum.

### 1. The Incident

Plaintiff, who is not a sailor and is not familiar with either the equipment used on sailboats or the manner in which they are sailed, was in Newport, Rhode Island on August 21, 2004 with her family and other members of the Port Washington (Long Island) Yacht Club ("PWYC") for a group charter sail aboard several twelve-meter racing yachts that provide charter sails in the waters off Newport. The sail was to include races among the several boats chartered by PWYC. Plaintiff, her husband, son, and daughter, as well as several other members of the group from PWYC, were assigned to sail on defendants' twelve-meter yacht Heritage.

Heritage was designed and built to compete for the America's Cup. It was launched in 1970, and took part in that year's competition. Defendant Barrows bought Heritage in 1990 and formed defendant HYC, Inc., a New Hampshire corporation, to be the legal owner of the vessel. Through HYC, Barrows offers Heritage to the public for charter sails in the summer months in the waters off of Newport. The business address of HYC is Barrows' winter residence address in New Hampshire, and Barrows is the president, vice-president, secretary, treasurer, registered agent, and the only director of HYC. With the exception of the booking of charters, which is handled by a booking agent in Newport (of which Barrows is a one-third owner), Barrows makes all of the

decisions in connection with HYC and its operation of Heritage as a charter vessel, including the hiring and compensation of crew and captains, maintenance, and when and where to haul the vessel for the winter. Barrows personally made the decision to purchase Heritage, and if the time came to sell the vessel, he would be the person who would make that decision.

The weather on the day of the sail was marked by high winds and rough seas, but the decision was made to go ahead with the sail. Because of the conditions, Barrows decided not to use the mainsail, but to sail with only the jib. Although passengers on Heritage can participate in the actual sailing of the vessel, no sailing experience is necessary to sail on Heritage, and the promotional materials used by the booking agent encourage people with no sailing experience to sail on a Heritage charter. Barrows himself welcomes passengers who have no sailing experience and is aware that, on any given sail, he may have passengers on board who have never sailed before and have no knowledge about how a sailboat or sailboat equipment works. When the passengers from PWYC were boarding Heritage, one of them who is an experienced sailor informed Barrows that some of the other passengers who would be on his yacht had no experience or ability as sailors.

At no time, either before or during the sail, did defendants warn the passengers about the presence of the turning blocks on the deck of the vessel, despite the fact that the blocks are in easy reach of where charter passengers typically sit, that they are capable of causing serious injuries, and that charter passengers are known to include people who have no knowledge of what turning blocks are, how they operate, or the risk of serious injury that they pose. Plaintiff and other charter passengers who were on the vessel that day will testify that defendants briefed them only about the location of life vests, the

location of the head, and that weather conditions would prevent them from using the mainsail.

Because of the weather, the yacht did not leave the area of Narragansett Bay outside of Newport Harbor; nevertheless, the conditions were difficult, with steady strong and gusting winds. Some passengers took part in sailing the vessel, either manning the winches on the foredeck or taking a turn at the helm. Plaintiff did not participate in any way in the sailing of the vessel; she stayed in the cockpit area, where other non-sailing passengers were sitting, for the entire duration of the sail.

The injury occurred toward the end of the sail, when the races with the other vessels had been completed and the vessel was sailing on its own. Plaintiff was sitting on the edge of the deck on the starboard side of the yacht with her legs and feet in the cockpit area, where others were similarly sitting. The yacht was heeling to starboard, with its port side up, so she was now positioned on the lower side of the yacht, with her back to the water, facing inboard. She was supporting herself by leaning back against the deck and placing her hands behind her. Unbeknownst to her, she had her right hand on the starboard side turning block, which is a pulley-like device mounted on the deck of the yacht, on each side of the cockpit area, through which sail lines run and are pulled during the maneuvering of the yacht. After a few minutes, plaintiff observed a crew member on the foredeck pulling one of the sail lines, and she immediately felt excruciating pain as her right hand was caught in the turning block and mangled. Other passengers came to her assistance, pressure was taken off the line by turning the helm of the vessel, and plaintiff's hand was freed from the block. Captain Barrows then radioed the harbormaster for help, plaintiff was transferred to the harbormaster's boat, and she was

brought to a dock where an ambulance then transported her to Newport Hospital for emergency treatment.

2. <u>The Injury</u>

At Newport Hospital, plaintiff was diagnosed with a degloving injury of her right hand with an open fracture of her index finger, an open fracture/dislocation of her middle finger, tendon and nerve damage to her index and middle fingers, and an avulsion (tearing away) injury to her ring finger. A four-hour operation was performed to repair the traumatic damage. Plaintiff has since had two more operations, in March of 2005 and in October of 2006, by her current hand surgeon at the Hospital for Special Surgery in New York City, to remove adhesions from the tendons in her hand in an attempt to improve digital flexion. These operations have not succeeded in restoring function, and plaintiff is now planning another surgery in October of this year with the goal of improving the functioning of her hand. Even if this surgery is successful, plaintiff will still be left with a significant impairment and disability of her dominant hand for the rest of her life.

3. <u>Damages</u>

Plaintiff has suffered a devastating injury that will affect her every day for the rest of her life. She is right-handed, so most of the simple hand-related activities that one takes for granted are difficult for her. She continues to experience regular and significant pain in her hand, and will have to undergo additional surgery and painful post-operative physical therapy. Moreover, the disfiguring nature of her injury causes her significant embarrassment and self-consciousness, and she often wears a glove to conceal her injury as best as she can.

Plaintiff's medical bills so far total approximately $170,000. Given the need for future surgery and physical therapy, it is likely that her medical bills will eventually total at least $200,000.

Prior to her injury, plaintiff was a very successful interior designer. She had worked in New York City for a number of years with a company founded by her mother, doing interior design for high-end condominiums. In 2003 she formed her own business, Matthews Sutherland Design Associates, and at the time of her injury she was working on two major residential design projects with a Long Island architectural firm. These projects were generating significant commissions and plaintiff expected her business to grow over the years. Plaintiff has a record of high earnings: in 2000 she earned $100,000 and in 2001 she earned $140,000. Plaintiff has not been able to return to work, and her current treating surgeon has stated that he is not sure when, if ever, plaintiff will be able to return to her former high level of professional work. Therefore, it is clear that plaintiff has also suffered a significant economic loss in addition to her physical injury.

## B. APPLICABLE LAW

Since plaintiff claims damages resulting from conduct that occurred aboard a vessel that was operating on navigable waters, principles of general maritime law apply. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959). "The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law" and require that plaintiff establish (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) a causal connection between the negligent conduct and the harm suffered by the plaintiff. 1 T. Schoenbaum,

Admiralty and Maritime Law 183 (4th ed. 2004). The legal duty a carrier owes to its passengers under admiralty law is well-established and straightforward:

> "It is axiomatic in maritime law that a carrier owes a duty of exercising reasonable care towards its passengers under the circumstances. . . . Under this standard the degree of care required must be in proportion to the apparent risk. . . . In other words, under certain situations, reasonable care may be a very high degree of care and in another situation it may be less."

Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir. 1988) (citations omitted). In maritime cases, the amount of care necessary to constitute reasonable care depends on an examination of the nature and degree of the risk. The greater the circumstances of the case demonstrate a type of risk that is different from the kind of risk encountered in daily life, and a type of risk that involves greater danger to the passenger, the higher the level of the shipowner's care will have to be in order to be "reasonable care." Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 172 (2nd Cir. 1983). In Rainey, for example, the plaintiff passenger tripped and fell over a stool on a cruise ship dance floor, a type of risk that one could easily encounter in daily life and that is not peculiar to maritime activities.

Here, however, plaintiff was injured during conduct and by a risk that are distinctly and purely maritime: defendants' failure to warn her to keep clear of a deck-mounted piece of potentially dangerous sailing equipment during a sail on a twelve-meter racing yacht under adverse weather conditions. Moreover, as is made clear by plaintiff's injury, the circumstances here involved a risk of significant danger to the charter passengers. Therefore, under well-settled maritime law, defendants had an obligation to use a great amount of care in order to have exercised "reasonable care" under these circumstances.

"Causation in maritime tort law is similar to the common law except for certain specialized causes of action granted to seamen and other maritime workers."

1 T. Schoenbaum, Admiralty and Maritime Law 188 (4th ed. 2004). Proximate cause is not an issue in this case as it is clear that plaintiff's hand was injured in the turning block and that a simple warning to stay clear of the block would have prevented the injury.

Defendants allege as an affirmative defense that plaintiff's own negligence, "in whole or in part" caused her injury. Under admiralty law, an injured person's own negligence, if any, does not bar recovery but operates to mitigate that party's damages. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406 (1953). Thus, admiralty applies a "pure comparative negligence" rule and plaintiff's recovery may be reduced only by the percentage of fault attributable to her, if any. 1 T. Schoenbaum, Admiralty and Maritime Law 194 (4th ed. 2004).

Defendants have also raised the maritime personal injury defense of limitation of liability. See 46 U.S.C. App. § 183. Under this defense, if a defendant shows that a vessel owner (here, the corporate defendant HYC, Inc.) did not have knowledge of, or was not privy to, the acts of negligence that caused injury, the vessel owner's liability is limited to the value of the vessel. See Joia v. Jo-Ja Service Corp., 817 F.2d 908 (1st Cir. 1987). However, this defense will provide no benefit to HYC because Barrows, who was the captain of the yacht, is an officer of, and in reality the alter ego for, HYC Inc. and "[w]hen a corporation owns a vessel, the test is whether culpable participation or neglect of duty can be attributed to an officer, managing agent, supervisor, or other high-level employee of the corporation." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999). Here, Barrows essentially was HYC, since he was the sole officer and director of the company and made every important decision concerning the vessel. Therefore, his negligent conduct in failing to adequately warn his passengers about the turning blocks

and to stay clear of them will be imputed to the corporation, thereby defeating the limitation of liability defense.

## C. MOTIONS IN LIMINE

Plaintiff expects to file a motion in limine seeking an order excluding any reference at trial to (1) defendant's compliance with 46 C.F.R. §185.506; (2) the turning block's compliance with 46 C.F.R. §177.960; and (3) the Coast Guard's issuance to Heritage of a Certificate of Inspection to carry passengers. As to the two regulations, the former required defendant to give a "passenger safety orientation" at the outset of the sail and the latter is a requirement that "exposed hazards" must be protected by a cover or guard. Plaintiff is not alleging that defendant violated either of these regulations and proof that neither was violated is irrelevant as to whether defendant is liable to plaintiff under maritime negligence principles for failure to warn her about the presence of the turning block. An order in limine precluding reference to these topics is necessary to avoid confusing the jury about what conduct of defendant is at issue in this case. Also, the fact that the vessel was certified to carry passengers is meaningless as to plaintiff's allegation of negligent failure to warn, but could be misinterpreted by a jury to conclude that certification excuses negligent conduct.

Plaintiff proposes to file her motion in limine at the beginning of September.

## D. PROPOSED JURY INSTRUCTIONS

Plaintiff requests that the court instruct the jury on the substantative legal principles applicable to this case as follows:

1. Plaintiff claims that defendants acted negligently during the charter sail on August 21, 2004, and that she was injured because of defendants' negligence. I will now

explain what the law requires the plaintiff to prove in order to prevail on her claim of negligence against defendants.

2. Negligence is simply the failure to use reasonable care. Reasonable care is the degree of care that reasonably prudent persons would use in the circumstances of a given situation. It can be doing something that a reasonably prudent person would not do, or failing to do something that a reasonably prudent person would do. 5 L. Sand, J. Siffert, W. Loughlin, S. Reiss, and N. Batterman, Modern Federal Jury Instructions, 90-12 (3rd ed. 2006) (Hereinafter cited as "MFJI").

3. The law places upon a ship owner the duty of exercising reasonable care toward passengers on its vessel. The reasonableness of defendants' conduct must be examined in relation to the circumstances of the incident and the degree of risk of injury that existed. Under certain situations, reasonable care may be a very high degree of care and in another situation it may be less. The more the circumstances of the injury involve risks peculiar to maritime activity, as opposed to risks that can be encountered in daily life, the higher the degree of care must be in order to be found to be reasonable care. Also, the degree of care required by the reasonable care standard varies with the level of risk in the particular situation. The greater the risk of harm, the greater the required level of care. Therefore, you must examine the circumstances of the charter sail and plaintiff's injury and decide whether or not defendants acted in a reasonably prudent way in light of all of those circumstances and the level of risk presented. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959); Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 172 (2nd Cir. 1983); Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir. 1987); MFJI 90-15.

4. This definition of negligence requires the defendant to guard against those risks or dangers of which it knew or by the exercise of due care should have known. In other words, the defendants' duty is measured by what a reasonably prudent person would anticipate or foresee resulting from the particular circumstances existing at that time. If it is foreseeable that harm could result from some condition or some object, then a vessel owner can be found liable for failing to warn its passengers about the condition or the object. Daigle v. Point Landing, Inc., 616 F.2d 825 (5th Cir. 1980); MFJI 90-13.

5. If you decide that defendants did not act negligently, then your deliberations are over and you must return a verdict for defendants. If you decide that defendants did act negligently, then you must decide whether that negligence was what the law refers to as the "proximate cause" of plaintiff's injuries.

6. Negligence is the proximate cause of an injury if it appears from the evidence in the case that the conduct alleged to be negligent, here the failure of defendants to warn the charter passengers about the turning blocks and to keep their hands clear of them, played a substantial part in causing the injury, and that the injury was a direct result or a reasonably probable consequence of the negligence. If you find that defendants were negligent, and that their negligence played a substantial part in causing the injury or that the injury was a direct result or a reasonably probable consequence of the negligence, then your verdict must be for plaintiff, and you must determine what amount of damages plaintiff is entitled to as compensation for her injuries. 1 T. Schoenbaum, Admiralty and Maritime Law, § 5-3 at 189 (4th ed. 2004) citing Fournier v. Petroleum Helicopters, Inc., 665 F. Supp. 483, 486 (E.D. La. 1987).

7. I have already explained that you may find the defendants liable to the plaintiff if they acted negligently, and if such negligence played a substantial part in

causing plaintiff's injuries. In this case, the defendants claim that plaintiff's injuries were due, at least in part, to her own negligence. This is referred to as "contributory negligence." However, even if you find that the plaintiff was negligent under the standards that I will describe in a moment, that does not prevent her from recovering damages. Rather, it would result in a reduction of plaintiff's damages in proportion to the amount of negligence attributable to plaintiff, as I will explain in detail shortly. United States v. Reliable Transfer Co., 421 U.S. 397 (1975); MFJI 90-26.

8. A passenger on a vessel has a duty to use the care that a reasonably careful person would use under the circumstances. Therefore, to sustain its claim that the plaintiff was contributorily negligent, the defendant must prove by a preponderance of the evidence that the plaintiff failed to exercise the amount of care that a reasonably prudent passenger would under the circumstances, and that such failure played a substantial part in bringing about her injuries. MFJI 90-27.

9. If you find by a preponderance of the evidence that the defendants were negligent and that their negligence played a substantial part in causing plaintiff's injuries, and you find by a preponderance of the evidence that plaintiff was negligent and that her negligence played a part in causing her own injuries, you must then determine what percentage of fault is attributable to defendants and what percentage of fault is attributable to plaintiff. You will report these percentages on the special verdict form which I will discuss shortly, and they must total 100 per cent. Do not make any reduction in the amount of damages that you award to the plaintiff. I will decrease the amount of damages you have found, if any, by the percentage by which you find her negligence contributed to her own injuries. MFJI 90-29.

10. I am now going to instruct you on damages in the event you should reach that issue. The fact that I instruct you on damages does not indicate any view by me that you should or should not find for plaintiff on liability.

11. Plaintiff bears the burden of proof to show both the existence and the amount of her damages by a preponderance of the evidence. But this does not mean that she must prove the precise amount of her damages to a mathematical certainty. What it means is that she must satisfy you as to the amount of damages that is fair, just, and reasonable under all the circumstances. Damages must not be enlarged so as to constitute either a gift or a windfall to plaintiff or a punishment or penalty to defendants. The only purpose of damages is to award reasonable compensation. You must not award speculative damages, that is, damages for future losses that, although they may be possible, are unlikely to occur. If you should award damages, they will not be subject to federal or state income taxes, and you should therefore not consider such taxes in determining the amount of damages. Pattern Jury Instructions for Cases of Maritime Employee Personal Injury, Hornby, J., United States District Court for the District of Maine (Draft, 2006).

12. The first category of damages is reasonable medical expenses. You may award plaintiff a sum to compensate her for the cost of any medical care that she has already received that was reasonable and necessary to treat her hand injury, and any reasonable and necessary medical care that she may have in the future to treat her injury. Pattern Jury Instructions for Cases of Maritime Employee Personal Injury, Hornby, J., United States District Court for the District of Maine (Draft, 2006).

13. The second category of damages is lost wages and earning power. You may award plaintiff a sum to compensate her for any earnings she has lost from the time

of the incident to the present, and any loss of earning power that you find from the evidence she will probably suffer in the future, as a result of defendants' negligence.

In determining the amount of future loss, you should compare what plaintiff's health, physical ability and earning power were before the accident with what they are now; the nature and severity of her injuries; the expected duration of her injuries; and the extent to which her condition may improve or deteriorate in the future. The objective is to determine the injury's effect, if any, on future earning capacity, and the present value of any loss of future earning power that you find plaintiff will probably suffer in the future. In that connection, you should consider plaintiff's work life expectancy, taking into account her occupation, her habits, her past health record, her state of health at the time of the accident and her employment history. Work life expectancy is that period of time that you expect plaintiff would have continued to work, given her age, health, occupation and education.

If you should find that the evidence establishes a reasonable likelihood of a loss of future earnings, you will then have to reduce this amount, whatever it may be, to its present worth. The reason for this is that a sum of money that is received today is worth more than the same money paid out in installments over a period of time since a lump sum today, such as any amount you might award in your verdict, can be invested and earn interest in the years ahead.

You have heard testimony concerning the likelihood of future inflation and what rate of interest any lump sum could return. In determining the present lump sum value of any future earnings you conclude plaintiff has lost, you should consider only a rate of interest based on the best and safest investments, not the general stock market, and you may set off against it a reasonable rate of inflation. Pattern Jury Instructions for Cases of

Maritime Employee Personal Injury, Hornby, J., United States District Court for the District of Maine (Draft, 2006).

14. The third category of damages is pain and suffering and mental anguish. You may award a sum to compensate plaintiff reasonably for any pain, suffering, mental anguish and loss of enjoyment of life that you find defendants' negligence has caused her to suffer and will probably cause her to suffer in the future. Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on this element of damages. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, attempting to come to a conclusion that will be fair and just to all of the parties. Pattern Jury Instructions for Cases of Maritime Employee Personal Injury, Hornby, J., United States District Court for the District of Maine (Draft, 2006).

**E. <u>PROBABLE LENGTH OF TRIAL</u>**

Plaintiff estimates that the trial of this case will likely require 8 to 10 days to complete.

LYNN M. SUTHERLAND

By her Attorneys,

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

/S/John S. Foley
John S. Foley Bar #2060

## CERTIFICATION

I hereby certify that I served the within document by electronic filing to the following counsel of record: Robert E. Collins, Esq., rcollins@clinmuzyka.com and Michael R. Hagopian, Esq., michael@mhagopianlaw.com; and by regular mail, postage prepaid, to **Thomas J. Muzyka, Esq.**, Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, MA 02108, on the 30th day of July, 2007.

/S/John S. Foley
John S. Foley Bar #2060

Sutherland P040