**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CIVIL ACTION**
**NO. 05-450-S**

**LYNN M. SUTHERLAND,**
**Plaintiff,**

**VS.**

**HYC, INC. and JEFFREY BARROWS,**
**Defendants.**

**DEFENDANTS, HYC, INC. AND JEFFREY BARROWS, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Now come the defendants, HYC, Inc. and Jeffrey Barrows, in the above-entitled action, by and through their undersigned counsel, Clinton & Muzyka, P.C., and submit their Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. STATEMENT OF THE CASE

On August 21, 2004, the plaintiff, Lynn Sutherland, was a passenger on the 12 Meter Yacht HERITAGE, owned by defendant HYC, Inc. The defendant, JEFFREY BARROWS, was the vessel's Captain. During the charter cruise, the plaintiff suffered a hand injury, resulting in a partial amputation of one finger and other injuries to her right hand. The plaintiff commenced this action in the United

States District Court for the District of Rhode Island on August 4, 2005 against both defendants.

The plaintiff maintains that the defendants failed to warn her of a dangerous condition. The defendants maintain that such dangerous condition, if one existed, constituted an “open and obvious” condition for which there was no duty to warn. The defendants, in the alternative, argue that appropriate warnings were issued satisfying any requirement to the plaintiff. The defendants seek Summary Judgment in their favor and against the plaintiff’s single liability allegation.

## II. PROCEDURAL HISTORY

The plaintiff commenced action on October 26, 2005. The Complaint contains one Count for negligence against Defendants, HYC, Inc. and Jeffrey Barrows. *A copy of the Complaint is attached hereto as* Exhibit 1 to the Affidavit of Robert E. Collins.

The defendants filed their Answer on December 1, 2005, denying all liability and raising various Affirmative Defenses, including comparative fault of the Plaintiff and Limitation of Liability. *A copy of the Defendant’s Answer is attached hereto as Exhibit 2 to the Affidavit of Robert Collins.*

Thereafter, scheduled discovery commenced, including but not limited to, Request for Production of Documents, Interrogatories, inspection of the vessel, and medical and vocational rehabilitation examination of the plaintiff.

A Pretrial Conference was held before this Honorable Court on January 12, 2006, at which time a Pretrial Order issued setting forth dates for close of discovery and expert disclosures. Those dates have been extended by this Honorable Court upon motion of counsel.

On February 9, 2006, the plaintiff answered the defendants' Interrogatories. In particular, the plaintiff provided the following response:

> ***9. If you claim that any of the defendant's personnel failed to exercise reasonable care, please describe:***
>
> > ***(a) The name, title, or other identification of the personnel concerned, and;***
> >
> > ***(b) The act or omission of the above-described personnel which caused your injury.***
>
> ***<u>ANSWER</u>: I claim that the captain and his crew should have warned passengers, including me, about the turning block and to keep our hands clear of it and the lines that were going into it or around it.***

*A copy of Plaintiff's Answers to Defendant's Interrogatories is attached hereto as Exhibit 3 to the Affidavit of Robert Collins.*

Thereafter, depositions commenced and the parties have concluded discovery. Expert disclosures were completed on May 21, 2007. Captain Patrick A. Derry, one of plaintiff’s liability experts, states in his report:

> ***“the turning block in which Mrs. Sutherland caught her hand,(sic) presented a clear and foreseeable danger…”***

*A copy of Captain Derry’s report is attached hereto as Exhibit 4 to the Affidavit of Robert Collins*

The defendants now move for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## III. STATEMENT OF UNCONTESTED FACTS

### THE PARTIES

1. **Plaintiff Lynn Sutherland is a resident of Manhasset, New York.**

*See Plaintiff’s Answers to Interrogatories.*

**At all times material hereto, she was a member of the Port Washington Yacht Club in Port Washington, New York.**

*See Plaintiff’s Deposition attached hereto as Exhibit 5 to the Affidavit of Robert Collins at page 53.*

2. **Defendant HYC, Inc. was, at all times material hereto, the owner of the S/V HERITAGE (O.N. 604706).**

*Deposition of Jeffrey Barrows attached hereto as Exhibit 6 to the Affidavit of Robert Collins at 13, 16*.

**The S/V HERITAGE (O.N. 604706) is a 62’ wooden hull sailboat that was built in 1970 to compete in the defense**

**of the America's Cup. It was designed and is a 12 Meter Yacht.**

*See Deposition of Barrows at 29-31; Certificate of Inspection attached hereto as Exhibit 7 to the Affidavit of Robert Collins.*




**3. Defendant Jeffrey Barrows is a resident of Marblehead, Massachusetts and at all times material hereto was the principal officer of HYC, Inc. and the Captain of S/V HERITAGE on August 21, 2004.**

*Deposition of Barrows at 5, 13, 44.*

**THE CHARTERS**

4. **The S/V HERITAGE is employed in charters from Newport, Rhode Island in the summer months, along with the S/V COLUMBIA, S/V EASTERNER, S/V AMERICAN EAGLE, S/V WEATHERLY, S/V NEFERTITI, S/V INTREPID, S/V NORTHERN LIGHT, S/V GLEAM, and the S/V ONOWA.**

*Deposition of Barrows at 9-10*.

5. **The Port Washington Yacht Club of Port Washington, New York is a yacht club that had previously offered an excursion to its members to Newport, Rhode Island and had chartered 12 Meter Yachts for its members sailing/racing cruises.**

*See Plaintiff's deposition at 55-56; Deposition of John Sutherland attached hereto as Exhibit 8 to the Affidavit of Robert Collins at 15; Deposition of Kelly Sutherland attached hereto as Exhibit 9 to the Affidavit of Robert Collins at 7; Deposition of Patricia Hodson attached hereto as Exhibit 10 to the Affidavit of Robert Collins at 6; Deposition of Katherine Boulukos attached hereto as Exhibit 11 to the Affidavit of Robert Collins at 9; Deposition of Robert Hodson attached hereto as Exhibit 11 to the Affidavit of Robert Collins at 9; Deposition of George Boulukos attached hereto as Exhibit 12 to the Affidavit of Robert Collins at 10.*

6. **In the Summer of 2003, the plaintiff's family, consisting of the plaintiff Lynn Sutherland, her husband John Sutherland and their two teenage children, Kelly and Matthew, attended at Newport, Rhode Island with other Port Washington Yacht Club members and participated in 12 Meter Yacht sailing/racing. In 2003, they were passengers onboard the S/V AMERICAN EAGLE.**

*See Plaintiff's deposition at 56-60; Deposition of John Sutherland at 15-16; Deposition of Matthew Sutherland attached hereto as Exhibit 14 to the Affidavit of Robert Collins at 7*[1]*.*

---

[1] According to Matthew Sutherland he was not present in 2003 because he was at football camp. Deposition of Matthew Sutherland at 7-8.

**THE SUBJECT CHARTER**

7. **The Port Washington Yacht Club again organized another excursion for its members to Newport, Rhode Island and chartered five 12 Meter Yachts for August 21, 2004.**

*See Plaintiff deposition at 66; 69.*

**The vessels chartered were the S/V HERITAGE, S/V AMERICAN EAGLE, S/V WEATHERLY, S/V NEFERTITI and the S/V INTREPID. The charter scheduled a series of sailing/races among the five vessels in Narragansett Bay.**

*See Plaintiff deposition at 71; Deposition of Barrows at 40; Deposition of Patricia Hodson at 7.*

8. **The plaintiff, her husband, and the two children joined the excursion in 2004.**

*See Plaintiff deposition at 71; Deposition of John Sutherland at 19-20; Deposition of Matthew Sutherland at 8; Deposition of Kelly Sutherland at 9.*

9. **The August 21, 2004 Port Washington Yacht Club charter was scheduled for 1:00p.m. to 5:00p.m.**

*See Yacht Charter Agreement attached hereto as Exhibit 15 to the Affidavit of Robert Collins; Deposition of Barrows at 43.*

10. **The Sutherland family drove to Newport, Rhode Island and booked a room at the Newport Harbor Hotel and Marina.**

*See Plaintiff deposition at 67; Deposition of John Sutherland at 20-21; Deposition of Matthew Sutherland at 8-9.*

**The Port Washington Yacht Club members were to meet at the dock at the Newport Harbor Hotel and Marina.**

*Deposition of Matthew Sutherland at 8-9; Deposition of Barrows at 40.*

11. **When the members arrived at the dock for the charter, David Wollin of the Port Washington Yacht Club assigned them to the five 12 Meter Yachts.**

*See Plaintiff deposition at 71-72; Deposition of Barrows at 41; Deposition of John Sutherland at 21-22; Deposition of Matthew Sutherland at 11; Deposition of Robert Stearns attached hereto as Exhibit 16 to the Affidavit of Robert Collins at 9; Deposition of Joan MacInnes attached hereto as Exhibit 17 to the Affidavit of Robert Collins at 20, 25; Deposition of Katherine Boulukos at 10; Deposition of George Boulukos at 9-10; Deposition of Duncan MacInnes attached hereto as Exhibit 18 to the Affidavit of Robert Collins at 14, 17.*

12. **Because of the wind conditions on August 21, 2004, the 12 Meter Yacht owner's agreed prior to the commencement of the sailing/racing that only the jib [forward] sail would be used. The mainsail was not used that day. This was a prudent and appropriate decision.**

*Deposition of Barrows at 52; Deposition of Cedar Poirier attached hereto as Exhibit 19 to the Affidavit of Robert Collins at 16; Deposition of Emily Labnon attached hereto as Exhibit 20 to the Affidavit of Robert Collins at 10; Deposition of John Sutherland at 29; Deposition of Joan MacInnes at 26; Deposition of Katherine Boulukos at 11-12; Deposition of George Boulukos at 14; Deposition of Duncan MacInnes at 16.*

13. **On August 21, 2004, the S/V HERITAGE's crew consisted of Captain Jeffrey Barrows, First Mate Cedar Poirier, and deckhand Emily Labnon.**

*Deposition of Barrows at 44, 47; Deposition of Poirier at 9-13; Deposition of Labnon at 7-8; Deposition of Joan MacInnes at 23.*

14. **The Port Washington Yacht Club members who were assigned to the S/V HERITAGE on August 21, 2004 were the Sutherland Family members; Duncan and Joan MacInnes; Robert Stearns, Jr. and his fifteen(15) year old daughter Lindsey; Robert and Patricia Hodson and their fifteen (15) year old daughter Molly; and George and Katherine Boulukos.**

*Plaintiff deposition at 73; Deposition of John Sutherland at 24-27; Deposition of Robert Stearns at 5; Deposition of Joan MacInnes at 24-25; Deposition of Katherine Boulukos at 11; Deposition of Robert Hodson at 10; Deposition of George Boulukos at 10-11; Deposition of Duncan MacInnes at 14.*

15. **The thirteen passengers were within the S/Y HERITAGE'S U.S. Coast Guard's licensed carrying capacity for chartering purposes.**

*See Certificate of Inspection.*

**ORIENTATION AND SAFETY BRIEFING**

16. **Shortly after boarding the vessel, Captain Barrows gathered the passengers in the cockpit area for an orientation and safety briefing. During the briefing, Captain Barrows introduced himself and the crew to the passengers; stated that it was a breezy day and only the jib sail will be used in the interest of safety; advised**

**the passengers of the location of the life preservers; identified the location and operation of the head; advised where the fire fighting equipment was located; stated that there were refreshments on the aft deck; warned the passengers not to allow any plastic bottles to fall off the vessel; and warned the passengers to beware of the moving lines and blocks. The two crewmembers then gave further instructions to the individuals who will be actively participating in the operation of the vessel that day.**

*Deposition of Barrows at 51-55; Deposition of Poirier at 18-21; Deposition of Labnon at 17-18.*

**VESSEL/SAIL OPERATION**

**18. The lines to maneuver the jib sail (hereinafter referred to as "jib sheets") lead from a winch on the S/V HERITAGE's fore deck [which is operated by hand cranks commonly called "coffee grinders"] along the deck through a fairlead to the turning block. The turning block reverses the direction of the jib sheet so that the sheet will lead forward along the deck and then up to the jib sail.**

*Deposition of Barrows at 58-62; Deposition of Poirier at 20-21; Deposition of Duncan MacInnes at 39-43.*



19. **This jib sheet configuration is located on both the port and starboard sides of the vessel’s cockpit. Thus, each time there is a tack or jibe involving the transfer of the jib sail from one side of the mast to the other, one jib sheet will be taken up while the other jib sheet will be loosened.**

*Deposition of Barrows at 58; Deposition of Poirier at 43-44; Deposition of Duncan MacInnes at 41*.

20. **A vessel’s tack involves the jib sail passing from one side of the vessel mast to the other side, passing into and through the wind. The effect of a tack is that the vessel will change direction.**

*Deposition of Barrows at 61*; *Deposition of Poirier at 17-18.*

**A vessel’s jibe involves the jib sail passing from one side of the vessel mast to the other side, passing down wind. The effect of a jibe is that the vessel will also change direction.**

*See Deposition of Labnon at 9-10; Deposition of Duncan MacInnes at 26-27.*

21. **Each time there was a tack/jibe, the vessel followed a set procedure. The Captain or helmsman will call out, loud enough for everyone onboard the vessel to hear, “Coming About” or “Ready to Tack” or “Ready to Jibe”. The purpose of this announcement was to allow the two crewmembers and the passengers who were manning the coffee grinders to get into position. It also announced a warning to all passengers that a maneuver with the sail was about to be initiated.**

*See deposition of Barrows at 63; Deposition of Poirier at 22; Deposition of Labnon at 14; Deposition of John Sutherland at 45-46; Deposition of Matthew Sutherland at 25-26; Deposition of Kelly Sutherland at 17; Deposition of Stearns at 17-18; Deposition of Joan MacInnes at 33; Deposition of Patricia Hodson at 15; Deposition of George Boulukos at 20; Deposition of Duncan MacInnes at 27.*

22. **When the crew was in position, the two crewmembers responded “Ready Forward” or words to that effect.**

*Deposition of Barrows at 63; Deposition of Poirier at 22; Deposition of Stearns at 18; Deposition of Joan MacInnes at 33-34; Deposition of George Boulukos at 21; Deposition of Duncan MacInnes at 27-28.*

23. **As the maneuver was actually initiated, the Captain or helmsman then announced “Helm’s Over” or “Tacking” or “Jibing”. This announcement signified that**

**the vessel's wheel was actually being turned and the maneuver begun.**

*Deposition of Barrows at 63; Deposition of Poirier at 22-23; Deposition of Stearns at 18; Deposition of Joan MacInnes at 35-36; Deposition of George Boulukos at 21-22.*

24. **This procedure was consistently followed each time, including the tack in which the injury occurred.**

*Deposition of John Sutherland at 61; Deposition of Stearns at 17; Deposition of Katherine Boulukos at 16-17*

25. **The passengers boarded the S/V HERITAGE at approximately 1:00 p.m. and commenced sailing/racing. During the course of the day the S/V HERITAGE participated in three races. During the course of the day, the S/V HERITAGE's jib sail moved approximately 15-60 times from one side of the mast to the other side [coming about and jibing]. Each time it was intended for the jib sail to move, the series of verbal announcements occurred issuing warning to the passengers of the upcoming sail maneuver. The passengers had some 15-60 warnings issued in the 2 hours and 40 minutes of sailing before the injury.**

*See Plaintiff deposition at 96; Deposition of Barrows at 72-73; Deposition of Poirier at 16,24; Deposition of Labnon at 9-10; Deposition of Matthew Sutherland at 20-21; Deposition of Stearns at 16-17, 20, 23; Deposition of Joan MacInnes at 36, 42-43; Deposition of Katherine Boulukos at 16, 20; Deposition of Robert Hodson at 15-16;*

**THE INJURY**

26. **Prior to the injury occurring, the 12 Meter Yachts had concluded racing. The S/V HERITAGE was in Narragansett Bay heading in a westerly direction towards Jamestown, Rhode Island. The plaintiff's injury occurred at approximately 3:40 p.m.**

*See Plaintiff deposition at 96; Deposition of Barrows at 72-73; Deposition of Poirier at 24; Deposition of Labnon at 9; Deposition of Matthew Sutherland at 21 Deposition of Stearns at 16, 20, 23; Deposition of Joan MacInnes at 42-43; Deposition of Katherine Boulukos at 20; Deposition of Robert Hodson at 15-16;*

27. **The plaintiff was standing and leaning against the inboard cockpit coaming with her back adjacent to the starboard turning block. She was supported by her arms and hands which were behind her back and placed on the vessel's deck as indicated in the below photograph from Plaintiff's deposition ("dot L" for left hand and "dot R" for right hand). She was facing the port side of the S/V HERITAGE.**




**She had remained in this position for approximately 10 minutes before her injury. With her in the cockpit area were Joan MacInnes, Duncan MacInnes, Katherine Boulukos, and Patricia Hodson. Robert Stearns, Jr. was at the helm and Captain Barrows was to the immediate right of Mr. Stearns.**

*Plaintiff deposition at 102-104, 144-145; Deposition of Barrows at 63, 74; Deposition of Poirier at 28; 32; Deposition of Labnon at 8, 11, 13; Deposition of John Sutherland at 54-56; Deposition of Matthew Sutherland at 29-30, 33-34; Deposition of Stearns at 21-22; Deposition of Joan MacInnes at 44-49; Deposition of Patricia Hodson at 10, 18-19; Deposition of Katherine Boulukos at 22; Deposition of Robert Hodson at 15; Deposition of Duncan MacInnes at 28-32, 45.*

28. **As the vessel was approaching Jamestown, it was determined *that* a tack was in order to bring the vessel**

**about to an easterly heading to allow it to head back to Newport Harbor.**

*Deposition of Barrows at 63; Deposition of Poirier at 24-25; Deposition of Stearns at 23-24; Deposition of Joan MacInnes at 50; Deposition of Robert Hodson at 15; Deposition of Duncan MacInnes at 37-38.*

29. **The two crewmembers, Cedar Poirier and Emily Labnon, were on the foredeck in the vicinity of the jib winches/coffee grinders, along with plaintiff's husband, John Sutherland.**

*Plaintiff deposition at 121-2; Deposition of Poirier at 25; Deposition of Labnon at 12; Deposition of John Sutherland at 59-64, 69; Deposition of Matthew Sutherland at 29; Deposition of Stearns at 24; Deposition of Joan MacInnes at 50-51; Deposition of Duncan MacInnes at 38-39.*

30. **Kelly Sutherland and the other two teenage female passengers were on the S/V HERITAGE's portside rail, facing outboard with their feet hanging over the edge of the vessel's side.**

*Deposition of Kelly Sutherland at 20.*

31. **The remaining passengers, Robert Hodson, Matthew Sutherland, and George Boulukos, were in the stern area behind the wheel.**

*Deposition of John Sutherland at 69; Deposition of Stearns at 22; Deposition of Robert Hodson at 14; Deposition of George Boulukos at 24-25.*

32. **None of the vessel's crew or passengers observed the location where the plaintiff had placed her right hand immediately before the accident.**

See *Deposition of Barrows at 66-67; Deposition of Poirier at 28; Deposition of Labnon at 14-15; Deposition of John Sutherland at 65, 74-75; Deposition of Matthew Sutherland at 34; Deposition of Kelly Sutherland at 22; Deposition of Stearns at 24; Deposition of Joan MacInnes at 53-54; Deposition of Patricia Hodson at 23-24; Deposition of Katherine Boulukos at 25; Deposition of Robert Hodson at 18; Deposition of George Boulukos at 27; Deposition of Duncan MacInnes at 45-47.*

**33. The plaintiff testified that she was standing on the starboard side leaning up against the cockpit three feet forward of the wheel. Both her hands were behind her some ten (10") inches outboard. She did not look behind her to see where her hands were placed.**

*See Plaintiff deposition at 115-117.*



34. **The plaintiff testified that she did not hear Captain Barrows indicate that the vessel was coming about or any statement of that nature. She did observe the two female crewmembers up on the foredeck doing something with the ropes. She heard one of the female crewmembers giving instructions on what she was going to do and say "Okay, now" and the other respond "Okay, now?"**

*See Plaintiff's deposition at 121.*

35. **According to the plaintiff, she was not gripping any line or pulley on the deck immediately prior to her injury.**

*See Plaintiff deposition at 121-122*

*36.* **All deponent witnesses have testified that they were aware that a tack was forthcoming and that the crew followed the same procedure that it had followed during the entire charter, to wit, announcing a planned maneuver, the crew responding, and the helmsman announcing when the wheel was turned.**

*Deposition of Labnon at 14; Deposition of John Sutherland at 61; Deposition of Matthew Sutherland at 35-36; Deposition of Stearns at 23; Deposition of Joan MacInnes at 50; Deposition of Katherine Boulukos at 23-24; Deposition of Robert Hodson at 15-17; Deposition of George Boulukos at 25; Deposition of Duncan MacInnes at 38.*

37. **As the helmsman, Mr. Stearns testified that he personally made the announcement that a tack was forthcoming.**

*Deposition of Stearns at 23.*

*38.* **After Plaintiff heard the female crewmember indicate "Yes", she felt excruciating pain in her right hand.**

*Plaintiff deposition at 121.*

*39.* **During her deposition, Plaintiff testified as follows:**

**Q. Now, you've told me that you have no sailing experience, but if you had looked at the lines going into this block or this pulley system, the turning block as they call it, and you saw the lines moving in and out, you would have known that if you put your hand in there, that that would have caused damage to your hand; isn't that correct?**

**MR. BARRY: OBJECTION**

**A. Anyone looking at that, in looking at it and watching the lines, would see that if you put your hand in there, it could cause significant damage. I didn't see it obviously when I leaned back and placed my hand on the boat. I didn't see it. And I certainly, knowingly would not stick my hand in a winch.**

**Q. I appreciate that. But what I'm asking you is, during the time that you were on the HERITAGE, I believe you told me that you never looked at the lines and never looked at the winch or the block?**

**A. I didn't. I didn't give it any thought.**

**Q. Wouldn't it be prudent for a person who doesn't have any experience to look around the deck to see what moves and doesn't move so you don't get your hand or any other part of your body caught in ay of the moving objects?**

**MR. BARRY: Objection. You can answer.**

**A. Unfortunately, I never, ever thought of it or imagined that such a thing could happen.**
**…….**

**Q. So, as I understand your testimony, once you got on the HERITAGE, you didn't take any precautions whatsoever with regard to the block, meaning the pulley system, or the lines that were on the main deck?**

**A. No, I did not. It was never brought to my attention.**

**Q. But you would agree with me, if you looked at it and you saw the lines moving in and out of the block, you would not put your hands in it?**

**A. No one would put their hands in that mechanism. Why would anyone deliberately put their hand in that mechanism?**

*Plaintiff deposition at 134-136.*

40. **No equipment on the vessel broke or failed at the time of the Plaintiff's injury.**

*Deposition of John Sutherland at 71-72; Deposition of Matthew Sutherland at 37; Deposition of Kelly Sutherland at 26; Deposition of Stearns at 29; Deposition of Joan MacInnes at 62; Deposition of Patricia Hodson at 19-20; Deposition of Katherine Boulukos at 27; Deposition of Robert Hodson at 22; Deposition of George Boulukos at 29; Deposition of Duncan MacInnes at 50-51.*

**41. No actions of the crew, including Captain Barrows, at the time of the incident, caused the Plaintiff's injury.**

*Plaintiff deposition at 127-128; Deposition of John Sutherland at 73-74; Deposition of Matthew Sutherland at 37; Deposition of Kelly Sutherland at 26-27; Deposition of Stearns at 29-30; Deposition of Joan MacInnes at 62-63; Deposition of Katherine Boulukos at 27; Deposition of Robert Hodson at 22-23; Deposition of George Boulukos at 29-30; Deposition of Duncan MacInnes at 53-54.*

## IV. STANDARD OF REVIEW

The party seeking Summary Judgment "bears the initial responsibility of informing the Court of the basis for its motion in identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. vs. Catrett*, 477 U.S. 317, 323 (1986). Any inferences must be drawn in the light most favorable to the party opposing the motion. *T.W. Electric Services, Inc. vs. Pacific Elec. Contractors Association,* 809 F.2nd 626, 631 (9th Cir. 1987).

Once the moving party has satisfied this initial burden, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson vs. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)

quoting Rule 56(e) of the Federal Rules of Civil Procedure.

> If the party moving for Summary Judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, then the non-moving party may not rely on the mere allegations in the pleadings in order to preclude Summary Judgment.

*T. W. Electric Services, Inc. vs. Pacific Elec. Contractors, Association, Supra. at 630.* It is incumbent on the non-moving party to go beyond the pleadings and by affidavits, or by the “depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial.” *Celotex Corp. vs. Catrett, Supra. at 323*.

The mere disagreement on the bald assertion that a genuine issue of material fact exists “is insufficient to preclude an otherwise valid Motion for Summary Judgment.” *Harper vs. Wallingford,* 877 F.2nd 728, 731 (9th Cir. 1989). There is no issue for a trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson vs. Liberty Lobby, Inc., Supra. at 249*.

**V. <u>ARGUMENT</u>**

This matter involves a claim for personal injury by Lynn Sutherland on August 21, 2004. Mrs. Sutherland is a

53 year old resident of Manhasset, New York on Long Island. She is married with two children: Matthew aged 19 and Kelly aged 16.

Plaintiff and her family were members of the Port Washington Yacht Club. Jack Sutherland, Plaintiff's husband, would utilize the club for paddle ball and tennis. The children both went to sailing camps and attended sailing classes. Plaintiff did not participate in either sporting activities and would primarily only use the club dining facilities with the family. *Deposition of John Sutherland at 13-14*

In 2003, the year before the incident, Plaintiff and her family went with the Port Washington Yacht Club on an excursion to Newport, Rhode Island to sail on the 12 Meter Yachts. That year they were assigned to the S/V AMERICAN EAGLE and had an enjoyable time.

When the same excursion was offered in 2004, the family discussed it and it was agreed that they would attend. They drove from Long Island to Newport on Friday, August 20, 2004 and stayed at the Newport Harbor Hotel and Marina. The charter was arranged by the Port Washington Yacht Club and was for August 21, 2004 from 1300 to 1700 hours. There were five vessels chartered by the Yacht

Club: S/V AMERICAN EAGLE, S/V WEATHERLY, S/V NEFERTITI, S/V INTREPID and the S/V HERITAGE.

The Port Washington Yacht Club members who attended Newport met at the docks at the Newport Harbor Hotel and Dave Wollin of the club assigned the members to the particular vessels. The Sutherlands were assigned by Mr. Wollin to the S/V HERITAGE. Once the vessels left the dock at the Newport Harbor Hotel, they participated in mock America's Cup races. The witnesses generally agree that there were two races and that the S/V HERITAGE won at least one of them. During the racing, the passengers were allowed to participate by acting as grinders on the "coffee grinders" just forward of the cockpit.

Prior to attending Newport on August 20, 2004, Matthew Sutherland, the Plaintiff's son, had sustained an unrelated arm or shoulder injury playing lacrosse and his arm was in a sling. Thus, he did not participate as a grinder and basically remained in the stern area the whole time. Kelly Sutherland, the Plaintiff's daughter, had sustained a bruise to her head prior to boarding the vessel when she walked into the Hotel parking lot gate. She also did not participate in the sailing and mostly remained on the portside of the vessel with two other

teenage girls, Molly Hodson and Lindsey Stearns. *Deposition of John Sutherland at 37-38.*

The S/V HERITAGE is a federally documented Coast Guard inspected passenger vessel. It is one of a fleet of 12 Meter Yachts that charter out of Newport, Rhode Island in the summertime. It is 62′ in length and was built in 1970 by Morgan Yacht Corporation in St. Petersburg, Florida to participate in the defense of the America's Cup. It has a wooden hull and is presently owned by HYC, Inc., whose principal officer is Jeffrey Barrows. On August 21, 2004, the vessel was under the command of Captain Barrows and carried three crewmembers (including Captain Barrows) and 14 passengers, well within its certificated carrying capacity. The crew consisted of Captain Barrows, Mate Cedar Poirier, and Deckhand Emily Labnon.

Captain Barrows has owned the vessel since 1991 and is very experienced. *Deposition of Poirier at 10.* Mate Poirier has been involved with 12 Meter yachts in Newport for several years and is very experienced. *Deposition of Poirier at 5-6.* Emily Labnon was the youngest member of the crew but had been doing the work for over two months and was very familiar with the procedure. *Deposition of*

*Labnon at 7.* There is no claim of negligence by either Mate Poirier or Deckhand Labnon.

During the sail, there was a set procedure for a vessel maneuver. All witnesses indicated that when a sail maneuver was to occur, either a tack or a jibe, the person at the helm would call out “Ready to Come About” or something to that effect. That would signal the forward crew and the passengers at the coffee grinders to prepare. It would also act as a signal to the passengers that a vessel maneuver was forthcoming. Once in position, the crew would indicate they were ready and then the helmsman would announce “Coming About”, which would signal that the wheel was turned and the maneuver begun. All passengers have indicated that the procedure was followed every time and the announcement was loud enough for all to hear.

During the racing component of the charter, it appears that only Captain Barrows was at the helm. The testimony of the witnesses varied as to the number of times a tack or jibe was performed during the day, with the estimates ranging from 15 to 60. At the time of the incident, after the racing had concluded, Robert Stearns was at the helm with Captain Barrows directly to his side. Mr. Stearns testified that he announced the upcoming maneuver.

Plaintiff’s sole claim of negligence is that Captain Barrows or the crew failed to warn the Plaintiff about the turning block and to keep hands clear of the lines.

When the racing finished, there was still some time remaining on the charter, so the vessels continued sailing in Narragansett Bay. The vessel was proceeding in a westerly direction, towards Jamestown. As they approached the shore, it was apparent to Mr. Stearns and some of the passengers that a maneuver was needed or else the vessel would ground. The usual procedure was followed and all passengers, except the Plaintiff, testified that they knew a maneuver was forthcoming.

The plaintiff testified that she was a novice sailor who was merely going along for the ride. She remained the whole time in the cockpit, but really did not pay much attention to the operation of the vessel, even though her husband was one of the two grinders (with Robert Stearns). Plaintiff testified that she was standing on the starboard side and bracing herself with both hands behind her. All of the witnesses had her sitting in the cockpit with her hands behind her.

None of the passengers or the crew actually observed the location of the Plaintiff’s right hand just before the

incident. The Plaintiff testified that she was not holding onto the sheet, but believed she had her hand on top of the turning block.

At the time, the vessel was on port tack with the sail over the starboard side. Once the helm was turned by Mr. Stearns, the bow of the vessel proceeded through the wind and the jib sail transfers from the starboard side to the portside. This causes the jib sheet on the starboard side to move in the direction of the turning block and the portside grinders operate to bring in the slack.

According to Cedar Poirier the portside grinders had not yet begun bringing in the slack when the Plaintiff was heard to scream. Plaintiff’s two children, Matthew Sutherland and Kelly Sutherland, and Emily Labnon and Joan MacInnes testified that they actually saw Plaintiff’s hand in the turning block. See *deposition of Labnon at 16; deposition of Kelly Sutherland at 23-26; Deposition of Joan MacInnes at 60.* It is not strongly disputed that Plaintiff’s hand ended up in the turning block. Deckhand Emily Labnon testified that she actually saw the severed finger be knocked overboard by the movement of the jib sheet. *Deposition of Labnon at 17*

Captain Barrows immediately took the helm and started the motor. He contacted the Harbormaster and made

arrangements for the Harbormaster's vessel to take the Plaintiff to a waiting ambulance.

In her deposition, Plaintiff was questioned about the danger of injury if her hand should be drawn into the turning block. She testified that "no one would put their hand in that mechanism." Further, Plaintiff's expert, Captain Patrick A. Derry, opined that the turning block presented a clear and foreseeable danger.

**All of the passengers testified that no equipment on the vessel failed and there was nothing that the crew affirmatively did that caused the Plaintiff's injury.**

Plaintiff has brought a one count complaint for negligence. In response to Interrogatories, Plaintiff's sole claim for negligence is that the Captain and crew failed to warn the Plaintiff "about the turning block and to keep hands clear of it and that the lines were going into it or around it."

**THE LAW**

In the present action, the defendant, HYC, Inc., owes to its passenger the duty to exercise reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625 (1959); *Everett v. Carnival Cruises Lines*, 912 F.2d 1355 (11th Cir. 1990); *Beard v.*

*Norwegian Caribbean Lines,* 900 F.2d 71 (6th Cir. 1990); *Keefe v. Bahamas Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. 1989); *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63 (2nd Cir. 1988); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169 (2nd Cir. 1983); *Gibboney v. Wright*, 517 F.2d 1054 (5th Cir. 1975).

Notice of a defect cannot be imputed to a shipowner merely because it has created or maintained the site of the accident. *Everett v. Carnival Cruise Lines, Ltd.,* 912 F.2d 1355, (11th. Cir. 1990).

The vessel and defendant are not the insurer of the safety of the passengers. *Moore v. American Scantic Line, Ltd.,* 121 F.2d 767 (2nd. Cir. 1941); *Everett v. Carnival Cruises Lines*, 912 F.2d 1355 (11th Cir. 1990); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985); In re *Keansburg Steamboat Co.*, 249 F. 472 (2nd Cir. 1918).

Similarly, the mere happening of an accident or occurrence of an accident does not make the defendant liable to the passenger. *Katz v. Cie. General Transatlantique,* 271 F.2d 590 (4th. Cir. 1959).

Lastly and while there is a duty to warn passengers of dangers, this obligation extends only to those dangers which *are not apparent and obvious* to the passenger. *Luby*

*v. Carnival Cruise Lines, Ltd.,* 633 F. Supp. 40 (S.D. Fla. 1986), *aff'd mem.,* 808 F.2d 60 (11th Cir. 1986); *N. V. Stoomvaart Maatschappij Nederland v. Throner,* 345 F.2d 472 (5th Cir. 1965); *Zahares-Cody v. Norwegian Cruise Line Limited*, 2005 AMC 994 (11th. Fla. Cir. 2005).

The maritime law on failure to warn claims in admiralty is fairly set. The vessel owner has a duty to exercise ordinary care, including the duty to warn of a reasonably foreseeable harm. *Bubla v. Bradshaw, 795 F.2nd 349 (4th Cir. 1986).* It is well settled that there is no duty to warn of an open and obvious danger that a reasonably prudent person would take reasonable steps to avoid. *McMellon v. United States, 395 F.Supp.2nd 422 (S.D.W.Virg. 2005).*

Here, the S/Y HERITAGE was near the end of a four (4) hour charter. During the 2 hour and 40 minute cruise the vessel had been racing other 12 Meter Yachts, with some success. The racing and sailing entailed some 15 to 60 tacks which require the sail to move from one side of the mast to the other side with the sail sheets [lines] passing through the turning blocks. The turning blocks are positioned approximately amidship, one on each side of the cockpit. The sail sheets [lines] lead from the drum on the forward deck by the "coffee grinders" aft to the

turning block and then forward along the deck and up to the sail. This configuration and the sail sheets movements were in plain view and not obstructed.

The plaintiff's testimony that she did not view the turning block or the sail sheets does not create an issue of fact concerning the openness and obviousness of this alleged danger posed by the moving sail sheets [lines]. As stated in *Zahares-Cody v. Norwegian Cruise Line Limited, supra.*:

> ***This is because the "open and obvious" standard does not require actual notice of the danger. To the contrary, a defendant is entitled to expect, as a matter of law, that the Plaintiff would perceive that which would be obvious to her upon ordinary use of her senses. Luby v. Carnival Cruise Lines, Ltd.,*** **1986 AMC 2330, 2331-32, 633 F. Supp. 40, 42 (S.D. Fla. 1986).** ***The Plaintiff knew, or should have known, by the ordinary use of her senses, that it was dangerous to stand on deck in the conditions on the day in question.***

*Id. at 996.*

In addition, the plaintiff affirmatively states that she appreciated the nature of the danger posed by the turning block and sail sheets. She was aware of the risk of injury if her hand became drawn into the turning block. As she testified:

> ***Q. Now, you've told me that you have no sailing experience, but if you had looked at the lines going into this block or this pulley system, the***

***turning block as they call it, and you saw the lines moving in and out, you would have known that if you put your hand in there, that that would have caused damage to your hand; isn't that correct?***

***MR. BARRY: OBJECTION***

***A. Anyone looking at that, in looking at it and watching the lines, would see that if you put your hand in there, it could cause significant damage. I didn't see it obviously when I leaned back and placed my hand on the boat. I didn't see it. And I certainly, knowingly would not stick my hand in a winch.***

Her testimony that she was not paying attention and did not notice the operation of the turning block. This testimony and factual circumstance provides no defense to this Motion for Summary Judgment.

Therefore and as a matter of law, the defendants are not liable for failure to warn because the risk was "open and obvious" and the plaintiff appreciated the nature of the alleged danger and risk.

## VI. CONCLUSION

Based upon the uncontested facts, the present state of the law, and the legal arguments, the defendants submit that the nature and risk of the turning block and sail sheets at all times material hereto, were "open and obvious" and fully appreciated by the plaintiff. Upon

these facts and the law, the defendants did not owe to the plaintiff a duty to warn.

**WHEREFORE**, the defendants pray that this Honorable Court grant their Motion for Summary Judgment and dismiss the Complaint with prejudice.

Respectfully submitted,

By its attorney,

**CLINTON & MUZYKA, P.C.**

**“/S/Thomas J. Muzyka”**
**Thomas J. Muzyka**
**MA BBO NO: 365540**
**Robert E. Collins**
**RIBAR NO: 2951**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165
(617) 720-3489 Fax

Dated: September 11, 2007