UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LYNN M. SUTHERLAND, )
Plaintiff, )
)
v. ) CIVIL ACTION
) NO.: 05-450-S
HYC, INC. and JEFFREY )
BARROWS, )
Defendants. )

DEPOSITION OF JOAN J. MACINNES, a deponent in the above-entitled cause, taken before Susan Lozzi, Shorthand Reporter and Notary Public in and for Middlesex County, pursuant to the Federal Rules of Civil Procedure, at [redacted], [redacted], on Wednesday, January 24, 2007, commencing at 11:00 a.m.

DUNN & GOUDREAU
COURT REPORTING SERVICE, INC.
ONE STATE STREET - SUITE 1150
BOSTON, MASSACHUSETTS 02109
(617) 742-6900



APPEARANCES:

CLINTON & MUZYKA, P.C.
One Washington Mall - Suite 1400
Boston, Massachusetts 02108
(617) 720-3489
For the Defendants.
BY: ROBERT E. COLLINS, ESQ.

DECOF & DECOF, P.C.
One Smith Hill
Providence, Rhode Island 02903
(401) 272-1110
For the Plaintiff.
BY: JOHN S. FOLEY, ESQ.



INDEX



| EXAMINATION: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| By Mr. Collins | 4 | | 65 | |
| By Mr. Foley | | 64 | | 66 |



EXHIBITS



| No. | Description | Page |
|---|---|---|
| No. 1 | Photograph. | 45 |
| No. 2 | Photograph. | 48 |



*** Original exhibits were retained by Mr. Collins ***



P-R-O-C-E-E-D-I-N-G-S

JOAN J. MACINNES, having been sworn to tell the truth, testified as follows:

DIRECT EXAMINATION BY MR. COLLINS:

Q. Would you state your name, ma'am.
A. Joan Johnston MacInnes.
Q. Mrs. MacInnes, my name is Robert Collins, and I represent HYC, Inc., and Jeffrey Barrows. Have you ever had your deposition taken before? Have you ever been to a deposition?
A. Oh, no.
Q. This is your first time?
A. Yes.
Q. Okay. I'll be asking you some questions. The purpose is to find out information.
A. Mh-hmm.
Q. That brings up one thing. Mh-hmm's, points, nods don't show up on the record.
A. Okay.
Q. You've got to give a verbal for the record.
A. Yes, no.
Q. Yes.
A. Verbal.

Q. Does Molly --
A. Oh, yeah, that's it. Thank you. I'm old. You can leave that out.
Q. One, two, three?
A. Yeah, there's more.
Q. Seven, eight, nine, ten. That's 11.
A. There were 13 of us. Okay. The Stearns. I think it was Mr. Stearn and his daughter, and no clue their names.
Q. Did you know them prior to --
A. I'd met them. I'd see them sailing. She is learning how to sail and she is in the program.
Q. And this was back when the accident happened or now?
A. No. This is back when the accident happened.
Q. Okay. Now, where was the vessel docked when you boarded it?
A. It was at that long pier. When you're looking out towards the water, it's the left-hand side of the property that Treadway's on. There's a long pier where they always pull them in and they raft them up.
Q. Did you have to pass over any vessels to



get to the Heritage?
A. I believe so.
Q. Do you recall how many? How far out was it?
A. Had to go over at least one, maybe two. I don't know.
Q. Now, you indicated that you asked the captain about what sails would be used.
A. Right.
Q. At some point, did you get a response?
A. Yes. He told me only the jib would be used because of the wind.
Q. And was that in response to your question or did you learn that later?
A. He also restated it during the safety meeting.
Q. But he did pass that information to you when you asked?
A. He did because at that point, I would have gotten off the boat if he said both sails.
Q. And then you're saying you didn't get a response. That was to --
A. The fact that I had told him that half the people there don't know how to sail.



Q. Did he appear --
A. I don't think that's a very uncommon thing. You're paying to use the boat. You're not paying to be taught how to sail or expected to know how to sail.
Q. Can you tell me what your observations were of the captain?
A. Seemed efficient.
Q. And this was during the total charter?
A. Yeah. I mean, you go out, you sail. Theoretically race each other.
Q. Now, let me just back up and return to the safety briefing. Tell me --
A. Mh-hmm.
Q. Yes?
A. Okay. It's all right.
Q. I'm going to catch you a few times on that. It's usual.
A. Mh-hmm.
Q. Now, tell me what you recall about the safety briefing.
A. My recollections were that he said -- he told us we were only going to be using the jib and that the life preservers were down below and he



would get one for anybody who wanted to wear one; and that the head was down below, and he sort of went through quickly how to use it and that's all I really remember him saying.
Q. Do you recall any mention of lines?
A. Absolutely did not say it.
Q. Is it your understanding or your testimony that he didn't say it or you don't recall?
A. He did not say it.
Q. Have you inquired of any other people, like, for instance, Katherine, if she recalls any mention of lines in the safety briefing?
A. I asked her and she said she didn't remember.
Q. How about the commodore?
A. I don't think he remembered either, but having spoken about it, he just had surgery, so...
Q. Do you recall whether anything else was said other than the sail that would be used, life preservers, and where the head was located and how to use it?
A. He discussed who would be able to use the coffee grinders and, again, I think it was Mr. Sutherland and Mr. Stearn. Mr. Hodson had a bad

STATE OF MASSACHUSETTS)
COUNTY OF MIDDLESEX)

I, SUSAN LOZZI, Shorthand Reporter and Notary Public duly and qualified in and for the State of Massachusetts do hereby certify that the foregoing statement is a true and correct transcript of my original stenographic notes.

I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken; and furthermore, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial Seal this 28th day of January, 2007.

SUSAN LOZZI
NOTARY PUBLIC

My Commission Expires: April 2010.