**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

LYNN M. SUTHERLAND

vs. C. A. NO.: 05-450 S

HYC, INC. and JEFFREY BARROWS

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF SECOND MOTION IN LIMINE

Plaintiff expects that defendants intend to argue at trial that plaintiff failed to mitigate her damages because she did not work hard enough on her hand therapy or attend enough hand therapy sessions. Counsel for defendant cross-examined plaintiff's hand surgeon at his deposition on plaintiff's attendance at hand therapy, and defendants have requested a jury instruction on damages mitigation (Defendant's Proposed Jury Instruction No. 37). However, questioning of witnesses or presentation of argument on this topic should not be allowed at trial. Under settled damages principles, this type of argument, now more commonly referred to as the doctrine of avoidable consequences, can only be made if there is proof that plaintiff failed to use reasonable effort to obtain medical care, and that the medical care that was unreasonably foregone would have avoided some of her damages. See Restatement (Second) of Torts §918 (1979). Here, there is no proof of either of these elements, so the defense is factually groundless and may not be maintained. An *in limine* order is necessary because evidence or argument on this inapposite defense will serve only to confuse and mislead the jury and unfairly prejudice plaintiff in the eyes of the jury.

Plaintiff has without question made a diligent and reasonable effort, and continues to do so, to improve her condition. She has had three operations to repair her injury, the first at Newport Hospital on the day of the injury and the next two by her current hand surgeon in New York City, Robert Hotchkiss, M.D., one in March of 2005 and the other in October of 2006. Dr. Hotchkiss now plans a fourth operation, to fuse plaintiff's index finger in a slightly bent position and remove bone and tissue from her hand at the base of her amputated ring finger. At Dr. Hotchkiss's suggestion, plaintiff travelled to San Antonio in 2006 to obtain a second opinion from David Green, M.D., a nationally-known hand surgeon. She also traveled on her own initiative to Denver in 2007 for a consultation on her treatment options with Sean Griggs, M.D., the hand surgeon who repaired her initial injury on the day of the incident. Over the course of all of her treatment and surgeries, plaintiff has attended over 130 hand therapy sessions, which Dr. Hotchkiss describes as attending "fairly frequently." She has amassed $167,000 in medical bills for her injury-related treatment.

In the face of such an extensive record of medical care, it is ridiculous to suggest, as defendants apparently do, that plaintiff has not acted reasonably to avoid the consequences of her severe hand injury. Her history of treatment following her injury shows conclusively that she has fulfilled her obligation "to take reasonable steps to effect a cure for [her] injuries and to mitigate damages." Young v. American Export Isbrandtsen Lines, Inc., 291 F.Supp. 447, 450 (S.D.N.Y. 1968). Plaintiff's extensive treatment record stands in sharp contrast to the kind of refusal of medical care that the court in Young found justified application of the mitigation of damages defense. In Young, the plaintiff refused to undergo a recommended simple and safe operation to remove damaged cartilage from his

knee, which would have led to a full recovery. The court held that this unreasonable refusal of a curative operation required it to limit plaintiff's damages to the date when he would have returned to work had he agreed to the operation. Here, however, plaintiff has not refused any recommended treatment. On the contrary, she has demonstrated a record of treatment that stands in sharp contrast to the kind of neglect of treatment that the Young court found justified a reduction in damages.

Defendants' argument that plaintiff has acted unreasonably with respect to her medical treatment is based solely on a contention that she did not attend as many hand therapy sessions as she should have, what Dr. Hotchkiss has referred to as a "dropoff" in attendance at therapy (Deposition of Robert Hotchkiss, M.D. at 71). The treatment records demonstrate that plaintiff attended 52 therapy sessions in the six months after her first surgery, 49 sessions in the six months after her second surgery, and 24 sessions in the three months following her third surgery, with a total of 137 sessions over the period from September of 2004 to January of 2007. Any suggestion that, after undergoing such an extensive course of therapy, plaintiff acted unreasonably by not continuing on with even more therapy is utterly groundless.

Importantly, defendant's argument is also defeated by the total absence of the required medical evidence that any additional therapy would have made a difference in the condition of plaintiff's hand. "Importantly, the wrongdoer has the burden to show that such failure [to obtain prompt and adequate treatment] was both unreasonable under the circumstances and aggravated the plaintiff's injuries and increased his damages." 2 M. Minzer et al., Damages in Tort Actions, §16.31, at 16-47 – 16-48 (1991). There is no evidence whatsoever that additional therapy beyond the 137 sessions plaintiff had would

have improved her result. In fact, Dr. Hotchkiss testified under cross-examination at his deposition that "there's no way to know" whether additional therapy would have decreased the stiffness in plaintiff's crushed fingers:

> Q. Now, that effects [sic] the mobility of the fingers, if they're not being exercised. Isn't that correct?
>
> A. It can.
>
> Q. And, doctor, what you said was that after the first surgery she had greater flexion in her fingers, but as time went on, it slowed down. And from your experience, doctor, doesn't that indicate that the therapy is not being performed?
>
> A. <u>It's not a one-to-one correlation</u>. <u>I mean, I wish it was that simple</u>. And she and I had many discussions, as well as with the therapists, about how much she needed to be at therapy. So – … So, one of the questions always was – and, again, this had to do with the patient's level of pain, the patient's level of – again, she was still having problems at this time looking at her hand. And you can imagine getting somebody to sort of work on their motion when they're still being somewhat reluctant about looking at their hand. <u>So, how much impact the missed visits actually had is not – I don't know if I can say</u>. <u>Obviously, if she didn't come at all, then that's an easy answer</u>. <u>She came fairly frequently, but was that dropoff enough to trigger more stiffness? I can't – there's no way to know</u>.

Deposition of Robert Hotchkiss, M.D. at 69-71 (emphasis added). See attached deposition excerpt, Exhibit A. Dr. Hotchkiss clearly rejected counsel's proposition that decreasing flexion is due to insufficient therapy ("It's not a one-to-one correlation. I mean, I wish it was that simple.") and testified that "there's no way to know" if more therapy would have resulted in less stiffness. Also, defendants have failed to identify any medical expert to supply the necessary proof that more therapy would have resulted in better flexion. Therefore, an essential element of defendants' argument that plaintiff has

failed to mitigate her damages is missing and the argument therefore cannot be maintained.

Without any medical evidence to connect a dropoff in attendance at hand therapy to a worse result for plaintiff, evidence or argument about the dropoff will only confuse and mislead the jury. If the jury hears that plaintiff had a dropoff in attendance, they are likely to be misled or confused into concluding that her damages must somehow be reduced. And, of course, with no medical evidence as to how attendance may have affected the result, the jury would have no evidentiary basis for quantifying any reduction, so the impropriety of a reduction would be compounded by the lack of any evidentiary basis for quantifying it.

The unfair prejudice to plaintiff if defendants are allowed to question witnesses and present arguments on plaintiff's therapy attendance record when their mitigation of damages defense is factually unprovable, and therefore legally deficient, is obvious. The sole aim and effect of this evidence and argument, given its lack of evidentiary support, would be to discredit plaintiff in the eyes of the jury, presenting a substantial risk that plaintiff will be penalized by the jury for something that is not relevant to any valid legal or factual issue in the case. The only way to avoid such unfair prejudice is to enter an order prohibiting defendants from raising this topic in any way at trial.

For these reasons, plaintiff requests that this Court enter an order forbidding defendants from questioning any witnesses or presenting any arguments or statements to the jury about plaintiff's hand therapy attendance record.

LYNN M. SUTHERLAND

By her attorneys,

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

/S/ John S. Foley
John S. Foley, Esq. Bar #2060

**CERTIFICATION**

I hereby certify that I served the within document by electronic filing to the following counsel of record: **Robert E. Collins, Esq.,** rcollins@clinmuzyka.com and michael@mhagopianlaw.com, and by regular mail, postage prepaid, to **Thomas J. Muzyka, Esq.,** Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, 02108 on the 28th day of March, 2008.

/S/John S. Foley

Sutherland P074