**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CIVIL ACTION**
**NO. 05-450-S**

**LYNN M. SUTHERLAND,**
**Plaintiff,**

**VS.**

**HYC, INC. and JEFFREY BARROWS,**
**Defendants.**

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF DR. ALLAN FELDMAN**

Now come the defendants, HYC, Inc. and Jeffrey Barrows, in the above entitled action, by their attorneys and move this Honorable Court in Limine to preclude the testimony of Dr. Allan Feldman on the basis that his opinion as to loss of earning capacity and lost earnings is unreliable.

This matter involves a claim for personal injury brought by a passenger on the S/V HERITAGE on August 21, 2004. During the sail, she sustained a traumatic amputation of her right ring finger. Plaintiff has offered Dr. Allan Feldman as an economic expert to testify as to the present value of the Plaintiff's lost earnings.

Plaintiff Lynn Sutherland was self-employed at the time of the incident as an interior designer. In 1981 she began working at her mother's firm: Mary Mathews Interiors, Inc.. *See deposition of Plaintiff at page 13 line 18.*

(hereinafter cited as “Plaintiff at page/line”). She stayed employed with her mother for 22 years. *Plaintiff at 18/22.* She stopped working with her mother in 2003 because her mother was getting older and they had a different vision of the business. *Plaintiff at 18/24-19/6.* The breakup was not friendly and resulted in litigation. *Plaintiff at 22/10-22/19.*

After she left Mary Mathews Interiors, Inc. she formed her own company: Mathews Sutherland Design Associates Ltd. *Plaintiff at 30/11.* She started working a partnership with Smiros & Smiros, and architectural firm. *Plaintiff at 25/10.* Smiros & Smiros had some clients that needed interior design work. *Plaintiff at 25/18*. She would receive 50% of the commissions paid, receiving monthly draws at the rate of $8,000 per month. *Plaintiff at 32/3 and 34/7.* Smiros & Smiros her $69,508 for 2004, the year of the accident. *See Exhibit 1 to the deposition of James Smiros.* They continued to give her draws even though she was not working. *Deposition of Smiros at 17/8.* In addition, the plaintiff was an outside consultant and had to pay her own benefits.

Dr. Feldman computed plaintiff’s past and future lost wages at the level of $1,028,967. *See Feldman Exhibit 13.*

In arriving at this amount, Dr. Feldman <u>completely ignores the income that plaintiff earned at Matthews</u>

Sutherland Design Associates Ltd. He testified that he was reluctant to use her K-1 because it was her first full year of operation and because he was reluctant to compare partnership earnings with employment earnings. *Deposition of Feldman at 30/11-31/3.* He speculated that within 1-3 years she would return to the earning level that she had when she was working for her mother. *Deposition of Feldman at 32/13.* He admitted this speculation is baseless. *Deposition of Feldman at 32/17*. Because he did not use the partnership income, he did not deduct any of the expenses that she would have incurred in generating the income. *Deposition of Feldman at 32/21-33/1.*

Instead of using plaintiff's most recent income as her starting point for the computation of the present value of the lost wages, he took the earnings that plaintiff had from her employment at Mary Mathews Interiors, Inc., ending in 2000 and brought that forward to August 2004 as his starting point. *Deposition of Feldman at 33*. He treated plaintiff's earnings as if she had maintained employment with her mother, totally ignoring the actual earnings that she had in that 1½ year period.

Any analysis of the computation of the present value of lost wages in admiralty must begin with the seminal case of *Jones & Laughlin Steel Corporation v. Pfeiffer, 462 U.S. 523 (1983).* That case involved an action for negligence

brought by a longshoreman against the vessel owner under §905(b) of the Longshore and Harborworker’s Compensation Act, 33 U.S.C. §905(b). That case, although brought under §905(b) has been utilized as the standard for all admiralty actions. See for example Matter of Adventure Bound Sports, Inc., 858 F.Supp. 1192, 1199 (S.D.Ga. 1994).

In *Jones & Laughlin,* Mr. Justice Stevens, for a unanimous court, detailed at length the method for determining past and future lost wages. The court notes in several instances the inexactness of this determination, but is very definite about the starting point for the determination.

> In calculating damages, it is assumed that if the injured party had not been disabled, he would have continued to work, and to receive wages at periodic intervals until retirement, disability, or death. An award for impaired earning capacity is intended to compensate the worker for the diminution in that stream of income. The award could in theory take the form of periodic payments, but in this country it has traditionally taken the form of a lump sum, paid at the conclusion of the litigation. The appropriate lump sum cannot be computed without first examining the stream of income it purports to replace.

*Id. at 533 (footnotes omitted).* Mr. Justice Stevens continues:

> Each annual installment in the lost stream comprises several elements. The most significant is, of course, the actual wage. In addition, the worker may have enjoyed certain fringe benefits, which should be included in an ideal evaluation of the worker's loss but are frequently excluded for simplicity's sake. On the other hand, the injured worker's lost wages would have been diminished by state and federal income

> taxes. Since the damages award is tax-free, the relevant stream is ideally of *after-tax* wages and benefits. See *Norfolk & Western R. Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). Moreover, workers often incur unreimbursed costs, such as transportation to work and uniforms, that the injured worker will not incur. These costs should also be deducted in estimating the lost stream.

*Id. at 534 (footnotes omitted).* The court concludes "**The most obvious and appropriate place to begin is with the worker's annual wage at the time of injury.** *Id.* See also *Conde v. Starlight I, Inc., 103 F.3d 210 (1st Cir. 1997).* The methodology of Dr. Feldman has totally ignored this most basic instruction: start with the actual wages.

Thus, defendants' pray this Honorable Court rule in limine that the testimony of Dr. Allan Feldman is unreliable in its methodology and, in fact, is incorrect and contrary to the requirements of *Jones & Laughlin.* It will definitely confuse the jury.

**WHEREFORE**, the defendants move this Honorable Court grant their Motion in Limine to Preclude the Expert Testimony of Dr. Allan Feldman.

Respectfully submitted,

By its attorneys,

**CLINTON & MUZYKA, P.C.**

“/s/ Robert E. Collins”
**Robert E. Collins**
**Bar No. 2951**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

Dated: April 2, 2008

**CERTIFICATE OF SERVICE**

DECOF & DECOF
One Smith Hill
Providence, RI 02903
Attn: John S. Foley

I hereby certify that I electronically filed **Defendants’ Motion in Limine to Preclude the Testimony of Dr. Allen Feldman** on April 2, 2008. This document is available for viewing and downloading from the Court’s Electronic Case Filing System. Service on the above counsel has been effectuated by electronic means.

“/s/Robert E. Collins”
Robert E. Collins