Volume 1
Pages 1-52

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

Civil Action
No. 05-450-S

LYNN M. SUTHERLAND, :
Plaintiff, :
:
vs. :
:
HYC, INC. and JEFFREY BARROWS, :
Defendants. :

DEPOSITION of ALLAN FELDMAN, Ph.D., a witness in the above-entitled cause, taken on behalf of the Defendants, before Barbara M. Montijo, RPR, Commissioner in and for the State of Rhode Island, at the offices of Decof & Decof, One Smith Hill, Providence, Rhode Island, on January 23, 2008 scheduled at 3:00 p.m.

ORIGINAL

that she was partners with an architectural firm in Glen Cove, Smiros & Smiros. And she was 50 partner in that partnership.

She indicated in her deposition she had some dispute with them about commissions that she is owed, and that's all I know.

Q. Let me just put -- I'm somewhat bothered by the fact that you just didn't include her recent income. I'm wondering if you can explain that?

MR. FOLEY: I object to the form.

A. Well, one reason why I was reluctant to use her K-1 Form, K-1 S-Corporation income for 2003, was that was the first year, or the first full year of the operation of that firm. My expectation is that in the first year, earnings would substantially underestimate the ultimate earning potential in the firm; that was one reason.

Another reason is perhaps slightly more practical; and that is, I'm a little bit reluctant to take the K-1 Form S-Corporation ordinary income, and then average that with W-2 wages. W-2 wages and the S-corporation K-1 ordinary income may not really be the same

thing, and it may be apples to oranges if I try to take an average that includes that amount from that year.

Q. Wouldn't her most recent income be more reflective of her earning capacity?

A. Well, I think generally the most recent income is probably quite reflective of earning capacity in most cases, but in this case it has the complications that I mentioned of her having in effect switched jobs, from her mother's firm to this new startup firm.

And for that reason, I think the wage history at the mother's firm is actually more reflective than that corporate income in that one year.

Q. Did anything in her deposition indicate she would ever earn as much money as she did with her mother?

A. There was nothing in the deposition that I read that would indicate otherwise.

Q. I'm not sure I follow you. What indication did you have that she would ever reach the same income level on her own as she had when she was with her mother?

A. Well, she was evidently quite a talented lady, and she was well paid at her mother's firm. It didn't seem that she was being paid through her mother's charity. I mean, it seemed like she was earning those wages.

She was about 50 years old when she was injured. From my personal perspective, that's not really terribly old. I think it's very reasonable to assume that she could have moved on to her own firm and done as well as she had done previously with her mother.

Q. How long would that take?

A. That would -- that's hard to say, but my speculation would be a year, or two, or three, something like that.

Q. And what do you base the speculation on?

A. The speculation is baseless. That's just my intuition.

Q. It's your feeling?

A. Yeah.

Q. Did you include any -- well, you didn't. You didn't include any expenses that she would have because you didn't include the partnership income?

A. Okay. With respect to her wages, I don't have to include expenses. These are the actual wages and that represents her earning capacity. With respect to the business income, I didn't use that as a basis, but had I done so, then I probably would have had to look at the corporate income tax return. There might conceivably have been expenses which would have affected the figure, but I don't know because I haven't seen those returns.

Q. So, as I gather from your testimony, you computed the annual earning capacity by taking her '02 earnings and then bringing them forward to the date of the accident?

A. No. I took '98 through '02, five years.

Q. I'm sorry, you averaged?

A. I took the average, and that was the basis.

Q. And then how did you bring it forward to the date of the accident?

A. Okay. For the average of '98 through '02, I take the middle year and just assume that that's -- the average is roughly in the middle year dollars. So, the average year is --

Q. So, you took the median?

A. I took the median year, but I take the arithmetic average of those earnings. The arithmetic average of those numbers is $96,464.
Q. That includes the 47,258 for '98?
A. Yes, it does. So, I average those, and the middle year is 2002. And so, I assume that this arithmetic average I've calculated is, roughly speaking, in year 2000 dollars.
Q. I don't get that.
A. There's two alternative ways to do it, there's the simple way and complicated way. The complicated way would be to translate each year's figure, like the 47,258, and translate that from that year's dollars to some other year's dollars, like 2000 dollars, and do that for '98, '99, '01, '02, and then I'd have all those things in year 2000 dollars. And then, I would calculate an arithmetic average and that would be year 2000 dollars. That's the complicated way to do it.
Almost no one does it that way because it's really unnecessarily complicated, and you can get a very similar figure by just taking the middle year as the year for which -- as the