# EXHIBIT "1"

DESIGN EXCELLENCE, INC.

*Product Safety Engineering and Injury Causation Determination Resources*

435 Isom Road, Suite 224
San Antonio, Texas 78216-5144

John B. Lenox, M.D., Ph.D., P.E.
*President*

Phone: (210) 342-5596
FAX: (210) 342-4648

13 April 07

REF.: **SUTHERLAND v.**

SUMMARY EXPERT REPORT
By
**John B. Lenox, M.D., Ph.D., P.E.**

**Work Performed by Lenox:**

Case materials that I have had an opportunity to review and analyze have included:

- **U.S. Coast Guard** report
- EMT report: Lynn Sutherland
- Medical Records: Lynn Sutherland
  - **Newport Hospital**
  - Robert N. Hotchkiss, M.D.
- Radiographs, **Newport Hospital**: 5 lg.
- Subject Heritage sailboat starboard turning block accident scene photographs taken:
  - 31Oct05: 21.
  - 16Jun06: 24.
- Photos (laser copies) of Lynn Matthews-Sutherland's injured hand:
  - Pre-surgery: 2 (2 pgs.)
  - Post-surgery: 2 (2 pgs.)
- Reports:
  - David P. Green, M.D. {17May06}
  - Edward A. Nalebuff, M.D. {28Jun06}
- Deposition transcript with exhibits: Lynn Matthews-Sutherland {11Jul06}
- Deposition transcripts:
  - John Gordon Sutherland {29Jan07}
  - Kelly Sutherland {29Jan07}
  - Jeffrey Barrows {21Nov06}
  - George Boulukos {26Feb07}
  - Katherine Boulukos {26Feb07}
  - Patricia Hodson {26Feb07}
  - Robert Hodson {26Feb07}
  - Emily Labnon {24Nov06}:
    - Regular deposition commenced at 2:55 p.m.;
    - Video deposition commenced at 3:17 p.m.
  - Duncan C. MacInnes {24Jan07}
  - Joan J. MacInnes {24Jan07}

- ▪Cedar Poirier {25Sep06}
- ▪Robert Stearns {26Feb07}

•CD Rom's:

- ▪Deposition of Cedar Poirier {25Sep06}
- ▪Deposition of Emily Labnon {24Nov06}

**Accident Scenario Summary**: On 21 Aug 04 at approximately 3:42 pm, the right hand of Lynn M. Sutherland, a 50-year-old female, was seriously injured while riding as an inexperienced passenger in the cockpit of the Heritage US-23, high-performance, 12-meter racing yacht. While the Heritage was tacking, under conditions involving strong winds, rough seas, with Ms. Sutherland "seated" in the cockpit, up against the starboard side of the cockpit with her back facing starboard and her hands behind her to brace herself as the Heritage heeled to starboard, Ms. Sutherland's right hand somehow got caught on the starboard line leading to the jib sheet while it was running through the starboard turning block. This entrapment of Ms. Sutherland's right hand, in between the line leading to the jib sheet and the turning block/pulley, resulted in devastating injuries to her right index, middle, and ring fingers, with the distal aspect of her right ring finger landing onto the deck and falling into the water. No one saw where Ms. Sutherland's right hand was braced immediately prior to injury.

Although Ms. Sutherland's right thumb escaped injury, and her right fifth sustained only a partial thickness skin abrasion and partial attenuation of the central slip, her right index, middle, and ring fingers were damaged so extensively that multiple surgical procedures have failed to even come close to restoring sound hand function, leaving her dominate right hand markedly disabled. Her index finger sustained a complex near amputation with an open fracture of her proximal phalanx; immediately post-accident, radiographs of her right hand also documented that the distal, fractured-off portion of her index finger was angled over acutely towards the little finger side of her hand. The flesh of this index finger, distal to the fracture, was lacerated dorsally, crushed, and degloved, and tendons and ligaments were shredded and avulsed, and the ulnar digital nerve was avulsed. Her middle finger sustained an open fracture-dislocation of her proximal interphalangeal joint; here again, radiographs taken of her right hand immediately post-accident also documented that the distal, fractured-off portion of her middle finger was angled over acutely towards the little finger side of her hand, as was the distal fractured-off portion of her index finger. The flesh of her middle finger was crushed and degloved, her nail bed was injured, ligaments were ruptured, tendons were frayed, and pulleys were avulsed. Her ring finger sustained a "ring avulsion" with loss of and thus "skeletonization" of this finger to the level of the proximal interphalangeal joint and amputation of the distal phalanx.

**Summary Lenox Opinions**:
Once I analyzed all available evidence and data, I considered all reasonable accident scenario possibilities, discussed below, of how Lynn Mathews-Sutherland's right hand ended up crushed by the subject Heritage sailboat's starboard turning block. The opinions that follow below involve reconstruction of where Ms. Sutherland's right hand must have been braced, immediately prior to the fingers of her hand becoming crushed in/on the starboard turning block/pulley and comprised the major objective for Lenox participation in this case. These opinions derived from this accident scenario reconstruction and injury mechanism analysis, are rendered with reasonable trauma medical and biomechanical engineering probability.

1. On 21 Aug 04, immediately prior to Lynn Mathews-Sutherland's right hand ending up crushed in the Heritage sailboat's starboard turning block, Ms. Sutherland was leaning, rearward, against the starboard side of the cockpit, with her body facing inboard (i.e., to the port side of the cockpit) with her hands braced behind her to maintain her balance due to the Heritage heeling significantly to starboard. More specifically, the palm of her right hand was likely resting on the forward aspect of the turning block, with her palm positioned in between lines that lead to the jib sheet; her index, middle, ring, and 5th fingers were hanging down, and her thumb was resting on the top aspect of the turning block; in addition, the side of her index finger, closest to her thumb, was positioned close to the inboard turning block line.

2. When the helm was turned to initiate the tack and aggressive grinding began to crank the inboard line into the starboard turning block, Ms. Sutherland's right index finger was snagged in by the inboard line running into the turning block, followed rapidly by snagging her middle and ring fingers too, with these three fingers rapidly in succession becoming entrapped and progressively crushed in between this running line and the upper turning block pulley as this line wound onto the upper turning pulley. During this initial stage of finger entrapment, before Ms. Sutherland's fingers physically jammed the turning block pulley, stalling rotation, Ms. Sutherland's index, middle, and ring fingers were still hanging down, but now they were entrapped/crushed in between the line and its pulley, with the back of her hand facing to the port; in addition, her thumb never became entrapped in between the line and the pulley.

3. Of course, when Ms. Sutherland's essentially vertically-aligned right index finger failed to enter the horizontal pulley slot, on the starboard side of the turning block, the presence of her hand, entrapped/crushed in between the line and its pulley, jammed the thumb side of her right hand up against the fixed turning block slot, jamming the pulley, bringing an abrupt halt to the line running into the turning block. This forceful, high-speed jamming impact of Ms. Sutherland's hand, delivered first of all to the thumb side of her index finger, followed by the middle finger and then, with progressively less force, her ring finger jamming in there too, was more responsible for the catastrophic mutilating/crushing fingers injuries sustained than was the initial finger entrapment beneath the line. Note, too, that it

is this jamming of her fingers, up against the sides of the turning block slot, that resulted in both fracturing of her middle index and middle fingers and the acute angulation of the portions of her index and middle fingers distal to the fractures, with these fractured-off, distal sections of fingers angled off markedly toward the little finger side of her hand, as demonstrated radiographically immediately post-accident. Note, too, that Ms. Sutherland's right fifth finger sustained the least injuries since it was the last finger to become entrapped, and since it was involved little, if at all, in jamming the pulley's rotation as did the first fingers there – i.e., first the index finger, followed by the middle finger.

4. "Ring degloving" of the flesh, by the ring worn on the ring finger at the time of this accident, along with amputation of the distal aspect of Ms. Sutherland's ring finger, took place as the heavily damaged ring finger was being yanked free following the fingers having jammed up pulley rotation in the turning block. In other words, as the ring finger was yanked out of the turning block, the ring, which remaining entrapped, actually, itself, sheared off the flesh, "skeletonizing" the ring finger from just proximal to the neck of the proximal phalanx distally and avulsing/fracturing off the tip of the distal phalanx, too.

5. If Ms. Sutherland's right hand had been grasping the line, fore to the starboard turning block with her palm facing to port, into the cockpit (i.e., as illustrated by the Heritage's captain in Sutherland Exhibits/ Photos #7 & 8), the signature of right hand injuries sustained would have been very different. First of all, Ms. Sutherland's fifth finger would have been among the most severely injured. In addition, the index finger would have escaped much of the severe injuries actually sustained. Also, distal, aspects of the small and ring fingers, once fractured/dislocated off, would have ended up acutely angled over to the thumb side of the hand. Of course, since this alternative signature of right hand injuries was not sustained, Ms. Sutherland's right hand could not have been grasping the line, fore of the starboard turning block, with her palm facing to port, into the cockpit, immediately prior to her hand becoming entrapped and crushed.

6. If Ms. Sutherland's right hand had been grasping the line, forward of the starboard turning block with the back of her hand facing to port, away from the cockpit, only the distal aspects of her fingers would have become entrapped, crushed, lacerated, and fractured. The proximal aspects of her fingers, that were on the port side of the line, not at all in between the line and its pulley, would have been spared. Since this second, alternative signature of right hand injuries was not sustained, Ms. Sutherland's right hand could not have been grasping the line, fore of the starboard turning block, with the back of her hand facing to port, into the cockpit, immediately prior to her hand becoming entrapped and crushed.

7. Had Ms. Sutherland's right hand been palm down on the deck, fore of and in the vicinity of the starboard turning block, with her fingers either pointing to starboard, away from the cockpit, or to port, into the cockpit, there is a remote possibility that her hand – e.g., the ring on her ring finger – might somehow have been

snared and drug up such that her fingers ended up trapped in between the line and the starboard turning block pulley as the line ran into the turning block. However, even if this remote possibility were to have occurred, the chances that her hand could have ended up entrapped, configured exactly as described in paragraphs #3 & #4 above, as is required to have produced the exact signature of hand injuries sustained, remains even more remote.

I do not anticipate that the opinions expressed in this report will change. However, all of my opinions remain subject to change should new information surface that is judged by me as being significant.

**Lenox Education/Experience**:
My formal educational includes receiving a B.S. in Mechanical Engineering (**University of Pennsylvania**, 1963), an M.D. (**University of Pennsylvania**, 1968), and a Ph.D. in Mechanical Engineering (**Stanford University**, 1976; emphasis in kinematics/dynamics, biomechanical engineering). I have worked (1) in the field of bioengineering/biomechanical engineering/engineering design for over 43 years, and as (2) a trauma medical research physician, involved with simulating human impacts and/or investigating impact-induced injuries for over 28 years, focused on (1) reconstructing the accident scenarios responsible for, (2) the kinematics experienced in and (3) the specific injury mechanisms responsible for injuries sustained in accidents.

I have practiced medicine for eleven years on a part-time basis in Texas, and I am a licensed physician (Texas Medical License No. D5553). I am a Registered Professional Engineer (Texas Certificate. No. 57191). I taught mechanical engineering as an Associate Professor in the Division of Engineering at the **University of Texas at San Antonio (UTSA)** from 1984 to 1986. I have been a member of the Human Factors Society since 1983, and I have worked in the field of product safety engineering design since 1986. I founded **Design Excellence, Inc.**, in 1989. In 2000, I returned, part-time, to the **UTSA** as an Adjunct Associate Professor to (1) teach mechanism design, along with product safety engineering design and engineering ethics, to senior mechanical engineering students, and to (2) assist the **UTSA** College of Engineering in the development of their doctoral-level biomechanical engineering program.

John B. Lenox, M.D., Ph.D., P.E.

Encl: •Lenox Resume
•Lenox Fee Schedule
•Lenox Testimony List