**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

LYNN M. SUTHERLAND

vs. C. A. NO.: 05-450 S

HYC, INC. and JEFFREY BARROWS

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTIONS TO DEFENDANTS' MOTIONS IN LIMINE**

Plaintiff submits this memorandum in support of her objections to the six motions *in limine* filed by defendants. Each motion will be addressed separately.

**1. Defendants' Motion in Limine to Preclude the Testimony of Dr. Allan Feldman**

Defendants' attempt to preclude the opinion testimony of plaintiff's economist, Allan Feldman, Ph.D. of Brown University, is groundless. Dr. Feldman's analysis of plaintiff's lost earnings is based on sound methodology and an appropriate choice of the relevant years of plaintiff's earnings history on which to base the calculation. Therefore, defendants' argument, which goes to the weight of Dr. Feldman's opinions and not their admissibility, should be rejected. Their challenges to Dr. Feldman's opinions should be relegated to their proper context, which is cross-examination, not exclusion of the testimony.

First, defendants are wrong when they state (Motion at 3) that Dr. Feldman improperly used the earnings from plaintiff's employment with her mother's company, Mary Matthews Interiors, Inc. ending in the year 2000. In fact, Dr. Feldman's report and his testimony make it clear that he based his projections on an average of the last five

years plaintiff worked for Mary Matthews Interiors, Inc., from 1998 to 2002. Defendants' mischaracterization confuses Dr. Feldman's decision as to which past years of earnings to use to determine base earnings with his decision and method to set the value of each of those years' earnings in year-2000 dollars. Clearly, there is nothing unreasonable about using an average of five years of earnings history to establish base earnings. Using a five-year earnings history is certainly at least as reliable, if not more reliable, than using the one-year history for which defendants argue.

Defendants' principal criticism of Dr. Feldman's analysis is that he does not base his projections of future lost earnings on what plaintiff was earning in her partnership with Smiros & Smiros Architects in the year and a half before her injury. But while defendants cite to some of the testimony of James Smiros in support of their argument, they neglect to inform the Court that Mr. Smiros testified that, a month or two before plaintiff's injury, he and plaintiff had agreed to terminate their business relationship upon completion of the two partnership projects. (Deposition of James Smiros, 9-10). Dr. Feldman is on more solid ground in choosing to use a five-year earnings period from 1998 to 2002, rather than using plaintiff's earnings while in partnership with Smiros & Smiros as the best indicator of her future earning capacity, since her relationship with Smiros & Smiros was ending.

Dr. Feldman reasonably opted to used plaintiff's earnings history for the last five years of her employment with her mother's firm, from 1998 to 2002, as a more appropriate indicator of her base earning capacity. His opinion that this is a more appropriate choice for base earnings than what she was earning in the year before her injury in a partnership that was not going to continue is entirely appropriate. This is just

the kind of judgment that experts make all the time. While defendants are entitled to cross-examine Dr. Feldman on this choice of a base earnings figure, they are not entitled to have an opinion based on sound economic judgment barred simply because they disagree with it.

## 2. Defendants' Motion in Limine to Preclude Opinions of Dr. Richard Schuster

Defendants' motion with respect to the opinions of plaintiff's vocational expert, Richard Schuster, Ph.D., begins with a mischaracterization of Dr. Schuster's report. Defendants assert (Motion at 1) that the report "provides no expert opinion on vocational assessment or [plaintiff's] ability to work." In fact, Dr. Schuster provides a detailed and fully-explained vocational assessment of plaintiff's ability to work on pages 12-15 of his report.

Defendants further mischaracterize the report when they assert (Motion at 2) that Dr. Schuster does not state in the report that plaintiff suffers from chronic pain syndrome or post-traumatic stress disorder. While Dr. Schuster does not use the specific phrase "chronic pain syndrome" in the report, he mentions plaintiff's problem with pain repeatedly throughout the report, commenting on such pain-related issues as the presence of pain, its frequency, intensity, and the effect the pain has on plaintiff's sleep. Therefore, there could have been nothing new or surprising to defendants when Dr. Schuster described all of this previously identified and discussed pain as chronic pain syndrome.

Dr. Schuster also specifically mentions post-traumatic stress in his report at page 11 ("the emotional realm reveals particular ramifications in depression and post-traumatic stress symptomatology") and at 13 ("her comments as well as her presentation strongly implicate elements of both a post-traumatic stress disorder and significant

depressive symptomatology"). These are only two of a number of references by Dr. Schuster, who is a licensed psychologist, to the significant emotional consequences of her injury to plaintiff. This is a more than adequate disclosure of Dr. Schuster's opinion that plaintiff suffers from post-traumatic stress disorder and chronic pain, and defendants' argument that the report inadequately identifies these opinions is nothing more than word nitpicking. Defendants' motion in limine regarding Dr. Schuster's testimony should therefore be denied.

**3. <u>Defendants' Motion in Limine to Preclude Opinions Rendered by Captain Patrick A. Derry</u>**

Patrick A. Derry is a charter sailboat owner and captain, as well as a sailing instructor. He will testify that, given the proximity and accessibility of the turning block to passengers on Heritage, prudent seamanship and charter practices required that the passengers be warned to stay clear of the turning block. As defendants concede, Captain Derry clearly stated in his report that "prudent seamanship would dictate that a vessel's master would either take measures to isolate passengers from hazardous conditions or at least warn the passengers of the danger so that they might not needlessly expose themselves." Defendants' only challenge to the testimony of Captain Derry is that he provided more detail at his deposition as to the frequency of the efforts that should have been undertaken by the crew of Heritage "to isolate passengers from the hazardous condition" or "warn the passengers of the danger." Since the report clearly identifies what Captain Derry believes the crew should have done to protect passengers from the danger of the turning block, his deposition testimony about how often these efforts should have been undertaken is simply a natural extension of the opinion stated in his

report, rather than some new opinion testimony that covers some non-disclosed topic. Therefore, there is no basis for any *in limine* limitation of Captain Derry's testimony.

**4. Defendants' Motion in Limine to Preclude the Testimony of Dr. John Lenox**

Dr. Lenox, who holds a doctorate in mechanical engineering and is also a medical doctor, will testify that the pattern of plaintiff's injuries indicate that plaintiff likely had her hand on the turning block just before the tack, and that it was drawn into the turning block and crushed when the line moved through the block during the tack. This opinion is directed to defendants' contention that plaintiff was probably holding onto the line leading into the turning block just before her injury, and their contention that defendant Barrows had, in fact, warned the passengers to be aware of winches and lines. Plaintiff denies that she was holding onto a line just prior to her injury.

The only point that Dr. Lenox does not have an opinion on, how the mechanism of her hand being caught in the turning block caused the specific injuries to plaintiff's hand,[1] is not even an issue in this case. Plaintiffs do not have to prove when and how during the process of her hand being crushed in the turning block each of her lacerations, fractures, crush injuries, or her ring finger amputation occurred. There is no question that plaintiff's hand was caught and crushed in the turning block, since witnesses saw this. Therefore, that Dr. Lenox is not able to reconstruct the precise instant-by-instant crushing and injury-producing sequence of events due to the complexity of the injury process has no bearing on any issue in the case or the validity of his opinion that

[1] "I can't give you those details now. I've had a chance to look at the turning block. I've had a chance to see how deeply inward her hand would be jammed. And it's such a complex process with so much going on involving initial capture, travel inward, jamming of the hand and fingers, movement of broken pieces, open dislocations, almost near amputation of flesh and joints coming apart, that I can't tell you now how that happened." John Lenox deposition, at 70-71.

plaintiff's hand was likely drawn into the block during the tack from a position of resting on the block itself.

Defendants incorrectly complain that Dr. Lenox does not have an opinion on how plaintiff's hand was drawn into the turning block. Contrary to defendants' assertion, Dr. Lenox does describe, in fact twice, how plaintiff's hand was drawn in.

> Q. So your opinion is it happened how?
>
> A. Palm down on the top of the turning block, the forward aspect the thumb on top, the fingers draped down vertically on the side. …Unfortunately, the hand too close to the inboard line and when the line started going through the turning block something snagged the flesh or the ring, perhaps, and at that point gathered on in and committed to the - - to the - - to the jamming of the hand."

John Lenox deposition at 63-64.

> Q. Okay. Do you have an opinion whether or not her ring was snagged on the sheet?
>
> A. I don't know. It's certainly a viable working theory. Either that or her flesh itself was snagged and not her ring, or both those things were snagged. But I - - other than that, I don't have an opinion."

John Lenox deposition at 66.

These statements, combined with the opinion that plaintiff had her hand on the turning block, provide a clear articulation of Dr. Lenox's opinions as to both where plaintiff's hand was likely located prior to her injury and how that placement led to the injury. As such, these opinions are clearly competent and will assist the jury in understanding how plaintiff's hand was injured. They will also assist the jury in evaluating defendants' contention that plaintiff's hand was holding onto the line, not the turning block, which is what their injury causation expert, Dr. Albert King, will apparently testify to.

For these reasons, this Court should deny the defendants' motion as to the testimony of Dr. Lenox, and leave defendant to its right to challenge the weight of Dr. Lenox's opinions on cross-examination.

**5. Defendants' Motion in Limine to Preclude the Testimony of John Sutherland, Kelly Sutherland and Matthew Sutherland Concerning Pain and Suffering of the Plaintiff**

Trial testimony by plaintiff's three immediate family members about how her severe hand injury has affected her does not constitute the "needless presentation of cumulative evidence" so as to require that it be excluded under Fed. R. Ev. 403 despite its clear relevance. There is no rule, as defendants appear to suggest, that when a plaintiff testifies about her injury, all testimony on the same topic is cumulative and subject to exclusion under Rule 403. This notion is incorrectly identified by defendants as "the Best Evidence Rule," (Motion at 2), which it is not. The best evidence rule, codified as Fed. R. Ev. 1002, provides that "to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." That rule is obviously inapposite here.

Plaintiff's husband and two children have observed their wife and mother live for 3½ years with her injury and impairment. They can provide valuable insight to the jury on how the injury and impairment have affected plaintiff. This is an important element of plaintiff's damages, because she is seeking compensation for pain and suffering and physical impairment as the result of an obviously crippling injury. Defendants have presented no authority to support their assertion that plaintiff should not be able to prove this element of damages partly through the testimony of her immediate family members, and their motion should therefore be denied.

**6. <u>Defendants' Motion in Limine to Preclude Operating Room Photographs</u>**

The probative value of the four photographs of plaintiff's injured hand, taken before and after her surgery by Dr. Sean Griggs on August 21, 2004, is very high.

> "[G]ruesome injury photographs often depict exactly what the plaintiff has suffered, or what he or she must endure; the photographs may be gruesome, but so are the plaintiff's injuries. In many such cases, to exclude the photograph is to exclude the plaintiff's most telling evidence of a very serious injury, at the risk of great injustice."

5 M. Minzer et al., <u>Damages in Tort Actions</u>, §42.12[4] at 42-36 (1991). Significantly, plaintiff did not look at her own injury the day she was hurt, for obvious reasons, and so she is unable to testify as to how it appeared. Plaintiff's hand was wrapped immediately after the injury, so there is no testimonial equivalent to the photographs. And even if there was, it is trite but true to say that a picture is worth a thousand words.

It is important to note that the photographs were used by Dr. Griggs at his deposition to illustrate his testimony regarding the nature of the injuries that he had to treat and the results of his repair. Thus, the photographs are informative and educational for the jury, not merely prejudicial. Part of their probative value is that they will assist the jury in understanding plaintiff's initial injuries, how Dr. Griggs repaired them, and how they relate to the problems that Dr. Hotchkiss encountered in later treatment. Therefore, they are relevant not only to pain and suffering from the original injury, and resulting impairment, but also to the treatment that plaintiff has received. It is important to note in this context that the photographs were taken by medical providers, at the time of surgery, and were not taken by plaintiff or her attorneys with the sole aim of depicting the gruesome nature of the injuries in the hope of garnering jury sympathy.

Rule 403 addresses only *unfair* prejudice. While the photographs may be graphic, they serve a number of highly relevant and important purposes. Consequently, it cannot be said that the defendants are suffering any unfair prejudice by their admission. Any prejudice to defendants comes from the high degree of relevance the photos have, and it is clearly not unfair.

For these reasons, this Court should deny the defendants' motion seeking exclusion of these injury photographs.

Respectfully submitted,

LYNN M. SUTHERLAND

By her Attorneys,

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

/S/John S. Foley
John S. Foley #2060

## CERTIFICATION

I hereby certify that I served the within document by electronic filing to the following counsel of record: Robert E. Collins, Esq., rcollins@clinmuzyka.com and Michael R. Hagopian, Esq., michael@mhagopianlaw.com; and by regular mail, postage prepaid, to **Thomas J. Muzyka, Esq.**, Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, MA 02108, on the 7th day of April, 2008.

/S/John S. Foley
John S. Foley Bar #2060

Sutherland P080