# EXHIBIT "1"

**David C. DuBois**
**229 Green Street**
**Fairhaven, Massachusetts 02719**

**RESUME CAPSULE:**

Over twenty five years experience as an independent marine surveyor and consultant combined with eleven years service as a commissioned officer in the U.S. Coast Guard. specializing in merchant marine inspections, naval engineering, casualty investigations, marine environmental protection, vessel construction and repair, licensing of merchant marine personnel, and various sea-going assignments.

**EXPERIENCE:**

1980 to present

MARINE SURVEYOR, CONSULTANT and P&I INVESTIGATOR, Fairhaven, MA. Conducted numerous condition, valuation, and damage surveys of all types of commercial and recreational vessels, including fishing vessels. Prepared casualty investigation reports for various marine insurance companies, law firms and vessel owners. Supervised major repair projects involving commercial vessels. Provide consultation relative to new construction and modifications of certified vessels. Provided loss control and safety oversight for fleet operators and vessel owners including regulatory standards, accident prevention and safety issues. Drafted professional Oil Pollution Protection Operations Manuals for waterfront transfer facilities and tank vessels. Conducted numerous P & I investigations involving seaman's injuries, liability claims. Founded and operated Tidewater School of Navigation in New Bedford, MA from 1980 through 1986. Tidewater School of Navigation was an independent private trade school licensed by the Commonwealth of Massachusetts to provide classroom training and education to Merchant Marine personnel in preparation for their U. S. Coast Guard License examinations or Seaman's Certificate examinations.

July 1978 - May 1980

CHIEF ENGINEER OFFICER, U.S. Coast Guard Cutter BIBB, New Bedford, MA. Responsibilities include operation and maintenance of all machinery, piping, ventilation, heating, electrical power distribution and hull structure systems.

January 1978 - July 1978

SPECIAL PROJECT OFFICER, First Coast Guard District, Naval Engineering Branch, Boston, MA. Supervised one million dollar overhaul of 2600 ton Coast Guard Cutter UNIMAK.

May 1972 - January 1978

MARINE INSPECTOR and INVESTIGATOR, U.S. Coast Guard Marine Safety Offices, Norfolk, VA and Providence, RI. Performed field inspections of all types of vessels including new constructions, surveys of passenger vessels, tankers and offshore supply vessels. Examined hull structures, machinery, firefighting and life saving equipment installations to ensure compliance with federal regulations. Conducted inspections for issuance of Certificates of Inspection on all types of vessels, evaluated safety equipment and manning levels. Conducted SOLAS inspections aboard numerous foreign tank vessels, passenger vessels and LPG vessels. As Senior Investigating Officer, coordinated efforts of approximately fifteen investigators and personally conducted numerous investigations of marine casualties and boating accidents relating to loss of life, collisions, groundings, personnel injuries, equipment failures and oil pollution incidents. As Senior Inspector of personnel, evaluated U.S. Merchant Marine personnel to determine their qualifications to be examined for Officer's Licenses or Seaman's Papers. Administered examinations and evaluated personnel to determine their fitness to be issued a license and, upon satisfactory completion of all evaluations and examinations, issued licenses and documents to approved personnel.

July 1969 - May 1972

U.S. Coast Guard Cutters BIBB and BOUTWELL, Boston, MA. Service in the capacity of ENGINEERING WATCH OFFICER and DAMAGE CONTROL ASSISTANT. Managed operation, repair and preventive maintenance operation, repair and preventive maintenance of all machinery as Assistance Engineer Officer. Trained ship's company in all phases of shipboard damage control and firefighting.

**EDUCATION**:

U.S. Coast Guard Academy, New London, CT. Bachelor of Science with concentration in Marine Engineering and Mathematics, 1965 - 1969.

Attended numerous professional training courses in ship design and construction, propulsion systems, weld inspection, non-destructive testing of materials, environmental protection systems, oil-spill countermeasure techniques, marine casualty investigation methods, and control of Marine Gas Hazards, 1972 - 1982.

**PROFESSIONAL DATA**:

Certified Marine Surveyor, National Association of Marine Surveyors (NAMS).

Member, National Fire Protection Association
Member, American Boat and Yacht Council

TAUNTON OFFICE
128 Dean Street, Front, 1st Floor
Taunton, MA. 02780-2762
Tel: 508-884-5055
Fax: 508-884-5056

MAINE/NH OFFICE
400 Commercial St., Suite 4
Portland, ME 04101-4660
Tel: 207-775-7933
Fax: 207-775-7471

**Marine Safety Consultants, Inc.**

Tel: (508) 996-4110)
Fax: (508 990-2094)

26 Water Street P.O. Box 615

Fairhaven, MA 02719-0615

May 23, 2007

Mr. Thomas J. Muzyka, Esq.
Clinton & Muzyka, P.C.
One Washington Mall
Suite 1400
Boston, Massachusetts 02108

Dear Mr. Muzyka:

You have requested that I review the matter of *Lynn Sutherland v. H.Y.C., Inc. and Jeffrey Barrows*, pending in the United States District Court for the District of Rhode Island.

I have reviewed the following documentation:

1. Deposition of Lynn Sutherland;
2. Deposition of Jeffrey Barrows;
3. Photographs of the vessel and the turning block;
4. United States Coast Guard Report of Investigation Into The Circumstances Surrounding The Incident Involving HERITAGE Passenger Injured On 08/21/2004;
5. Transcript of Videotaped Deposition of Cedar Poirier;
6. Transcript of Videotaped Deposition of Emily Labnon; and
7. Report of Captain Patrick A. Derry.

The S/Y HERITAGE (O.N. 604706) is a 12 Meter Sailing Yacht built in 1970 by Morgan Yacht Corporation in St. Petersburg, Florida. It participated for the defense of the Americas' Cup in

1970. It is presently owned by HYC, Inc., whose principal officer is Jeffrey Barrows of Marblehead, Massachusetts.

Opinion One:

The S/Y HERITAGE is a United States Coast Guard inspected passenger vessel [Sub-Chapter T]. The procedure for obtaining a Certificate of Inspection requires the owner to submit the vessel's plans to the United States Coast Guard naval architects at Headquarters in Washington, D.C. These plans are reviewed for several purposes, including passenger safety. Once the plans are approved, the vessel is inspected by an inspector from the local Marine Safety Office of the United States Coast Guard. If the vessel passes this onboard inspection, the United States Coast Guard will issue a Certificate of Inspection for the vessel's class and operation. A Certificate of Inspection is valid for one [1] year.

In order to maintain a current Certificate of Inspection to carry passengers, the vessel is inspected yearly by a United States Coast Guard inspector who physically attends aboard the vessel and performs the safety inspection. In respect to the S/Y HERITAGE, the United States Coast Guard inspector is from the United States Coast Guard MSO Office in East Providence, Rhode Island. The S/Y HERITAGE was last inspected by a United States Coast Guard inspector before the incident on May 24, 2004. According to the United States Coast Guard records, the S/Y HERITAGE passed its inspection, was approved as safe for carrying passengers, and was issued a Certificate of Inspection, which was current on August 21, 2004.

Based on the May 24, 2004 United States Coast Guard inspection and subsequent issuance of the Certificate of Inspection, the S/Y HERITAGE met all United States Coast Guard's requirements and regulations for passenger safety.

Opinion Two:

Mr. Derry, in his report, refers to 46 CFR §177.960. That regulation states:

> "An exposed hazard, such as gears or rotating machinery, must be properly protected by a cover, guard, or rail."

The turning blocks on the S/Y HERITAGE are in compliance with this requirement. The turning blocks are manufactured by Palmer Johnson and are standard sheet turning blocks in use in the sailing and racing industry. They are aluminum and consist of a housing [called cheeks] and hold two [2] aluminum sheaves [pullies]. The aluminum housing/cheeks comprise the cover and insulate the turning sheaves from the outside. The turning blocks are in full compliance with this regulation. Additionally and because the turning blocks have a cover, it is not an "exposed hazard", as that term is used in the regulation. Lastly, it is my further opinion that there is no additional or practical means for further guarding the turning blocks without rendering them inoperable.

Opinion Three:

In respect to public announcements, 46 CFR §185.506 states:

Passenger safety orientation.

(a) Except as allowed by paragraphs (b) and (c) of this section, before getting underway on a voyage or as soon as practicable thereafter, the master of a vessel shall ensure that suitable public announcements are made informing all passengers of the following:

(1) The location of emergency exits, survival craft embarkation areas, and ring life buoys;

(2) The stowage location(s) of life jackets;

(3) Either:

(i) The proper method of donning and adjusting life jackets of the type(s) carried on the vessel including a demonstration of the proper donning of a lifejacket, or

(ii) That passengers may contact a crew member for a demonstration as appropriate, prior to beginning an oceans or coastwise voyage;

(4) The location of the instruction placards for life jackets and other lifesaving devices;

(5) That all passengers will be required to don life jackets when possible hazardous conditions exist, as directed by the master; and

(6) If the vessel is operating with reduced manning or equipment requirements in § 176.114 of this chapter.

(b) As an alternative to an announcement that complies with paragraph (a) of this section, the master or other designated person may--

(1) Prior to getting underway, deliver to each passenger or, on a vessel that does not carry vehicles and that has seats for each passenger, place near each seat, a card or pamphlet that has the information listed in paragraphs (a)(1) through (a)(6) of this section; and

(2) Make an abbreviated announcement consisting of:

(i) A statement that passengers should follow the instructions of the crew in an emergency;

(ii) The location of life jackets; and

(iii) That further information concerning emergency procedures including the donning of life jackets, location of other emergency equipment, and emergency evacuation procedures are located on the card or pamphlet that was given to each passenger or is located near each seat.

I have reviewed the depositions of Captain Barrows and the vessel's crew, Cedar Poirier and Emily Labnon. In my opinion, the voyage commencement announcement as testified to by Captain Barrows and crewmembers Cedar Poirier and Emily Labnon complied with the requirements of this regulation.

Opinion Four:

It is my opinion that the S/Y HERITAGE's turning block operation [movement of the sheets through the block] constituted an open and obvious condition. On the day of the incident, only the jib sail was employed. It is my opinion that under the prevailing weather and wind conditions, the decision to employ only the jib sail was both prudent and a safe maritime practice.

The Master and crew testified that the vessel performed many tacks and jibes that day during the races and after the conclusion of the racing. The jib sheets [ropes] run to and from the turning blocks. The turning blocks are positioned on the vessel's port and starboard gunwales adjacent and outboard of the cockpit. As each tack or jibe is performed, one sheet is to be released and one sheet to be taken up. Thus, for each tack and jibe, the jib sheets move through the turning blocks on both the port and starboard sides. My review of the photographs and testimony indicate that there was nothing that was blocking the view of any of the passengers or crew of the turning blocks. Any of the passengers and/or crew could see the sheets moving in and out of the turning block and also the direction of the movement of the sheets. It is my further opinion that the procedure followed by the crew to announce the upcoming maneuver, have the forward crew indicate when they were ready, and for the helmsman to announce the initiation of the maneuver provided adequate warning to the passengers that a maneuver was forthcoming and was a safe maritime procedure.

Based upon the onboard procedures followed, it is my further opinion that the risk of injury at the turning blocks, for holding the sheets [ropes] or placing one's hand on top of the turning block was open and obvious. The subject injury occurred after at least two [2] hours of sailing, which involved at least fifteen [15] tacking maneuvers. Captain Derry admits that the turning blocks created a clear and foreseeable danger and the plaintiff admitted that it would not be prudent to place one's hand on the turning block.

Lastly, the starboard turning block's location, in my opinion, did not create a hazardous condition.

In summary, the S/Y HERITAGE was in full compliance of all United States Coast Guard and Certificate of Inspection regulations; the voyage commencement announcement given by Captain Barrows was in compliance with the passenger safety orientation announcement required by 46 CFR §185.506; the turning blocks was in compliance with 46 CFR §177.960 and not a hazardous condition; and anyone observing the turning blocks would see the jib sheets movements and comprehend the risk of injury that was open and obvious.

Sincerely,
MARINE SAFETY CONSULTANTS, INC.

David C. DuBois
Principal Surveyor