**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

LYNN M. SUTHERLAND

vs. C. A. NO.: 05-450 S

HYC, INC. and JEFFREY BARROWS

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL**

By answering question 6 on the Verdict Form that 80% of plaintiff's damages are attributable to her own negligence and only 20% are attributable to defendants' negligence, the jury found that plaintiff, a woman with no experience sailing and no knowledge of sailboat equipment or operations, was four times more culpable than defendants, who owned the vessel, were experienced in operating it, actually knew of the turning block and the danger of serious injury it posed, and negligently failed to warn their passengers about it. This illogical and irrational allocation of comparative fault is against the clear weight of the evidence and results in a clear miscarriage of justice. The only rational assessment of comparative fault here, the only assessment that accords with the weight of the evidence, is that defendants' negligence was greater than plaintiff's. Therefore, a new trial should be granted on this comparative negligence issue.

Also, submitting to the jury of the issue of whether the risk of the turning block was open and obvious, and instructing the jury that they had to decide whether defendants owed a duty of care to warn plaintiff about the turning block, was an error of law which confused the jury and prejudiced plaintiff on the comparative negligence issue, and also justifies granting a new trial on the comparative negligence issue.

## I. Applicable Law

The standard to be applied to a challenge to the factual basis for a jury's verdict by way of a motion for new trial is well-settled. As this Court recently stated, "under Rule 59(a), this court 'has a duty to set aside the verdict and grant a new trial if [it] is of the opinion that the verdict is against the clear weight of the evidence, or is based on evidence which is false, or will result in a clear miscarriage of justice.'" Chrabaszcz v. Johnston School Committee, 474 F.Supp. 2d 298, 311-312 (D.R.I. 2007), citing Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982). Phrased differently, a new trial is justified when the jury's resolution of a factual issue is a "seriously erroneous result." Coffran, 683 F.2d at 6.

Errors of law, including errors in jury instructions, can also form the basis for granting a new trial. "The trial court has broad discretion in crafting a jury charge and interrogatories, but a new trial may be warranted if the charge is erroneous or tends to confuse the jury on a material issue, provided that objection was made to the district court after the charge and before the jury retired." Chute v. Sears Roebuck & Co., 143 F.3d 629, 631 (1st Cir. 1998).

The express terms of Fed. R. Civ. P. 59(a)(1) allow a court to grant a new trial on less than all of the issues decided by the jury: "The court may, on motion, grant a new trial on all *or some* of the issues…" (emphasis added). A new trial on a limited number of issues is proper where "the issues to be retried are so distinct and separable from the other issues that a trial of those issues may be had without injustice." LaPlante v. American Honda Motor Co., 27 F.3d 731, 738 (1st Cir. 1994). See Liriano v. Hobart Corp., 949

F.Supp. 171, 175 (S.D.N.Y. 1996) (proper for retrial to be limited to existence and extent of plaintiff's comparative negligence).

## II. Facts

The trial record established conclusively that, at the time of her charter sail on Heritage, plaintiff knew nothing about sailing, sailboats, sailboat equipment, or sailboat operations. These undisputed facts came not only from plaintiff, but from Joan MacInnes, who testified that when she boarded Heritage she informed defendant Barrows that a number of the passengers boarding Heritage knew nothing about sailing, and that she included plaintiff in this group. While on Heritage, plaintiff did not take part in any way in the sailing of the vessel, but rather remained in the cockpit area and conversed with other passengers who were not participating in the sailing maneuvers.

In an attempt to dilute this overwhelming proof of plaintiff's ignorance of all things nautical, defendant offered only the facts that plaintiff had been a charter passenger on the yacht American Eagle in 2003, that her children had small sailboats, and that her family had a powerboat that they kept and used at a summer home. There is no evidence, however, that plaintiff herself ever operated any of these boats, and, of course, what her family members may have known about boating cannot be imputed to plaintiff. As to her sail aboard American Eagle, plaintiff testified that she sat on a bench near the captain and the helm for the entire sail and did not in any way participate in or observe the operations of the sailing of the vessel. Significantly, although defendants attempted to make much of plaintiff's sail on American Eagle, as if it had provided her with extensive sailing experience, they presented no evidence about the existence or location of deck-mounted turning blocks on American Eagle, or that plaintiff had ever

seen them or understood what they were. Consequently, any conclusion that plaintiff should have gained knowledge about turning blocks from her sail on American Eagle would be based purely on impermissible speculation.

On the other hand, the evidence establishes that defendants' knowledge of Heritage, its equipment, and its operation, is as complete as plaintiff's is lacking. Captain Barrows is, by his own admission, a highly experienced sailor who is familiar with both sailing in general and sailing on Heritage. He has owned Heritage since 1990 and regularly serves as its charter captain. Thus, he is intimately familiar with all of the equipment on the vessel, including the turning blocks. He admitted that the turning blocks adjacent to the cockpit pose a risk of severe injury, and that he is aware that many people who sail aboard Heritage have no sailing experience whatsoever. He also conceded that passengers often sit in the area where plaintiff was sitting at the time she was injured, and that this puts them in direct proximity to the turning blocks. Emily Labnon, one of defendants' crew members, testified that it is common for passengers to place their arms behind them for support, as plaintiff was doing when she was injured, especially if the vessel is heeling.

In short, the evidence adduced at trial establishes conclusively that defendants had all of the knowledge of sailing, sailboats, and sailboat equipment, and all of the experience and knowledge about sailing on Heritage, including actual knowledge of the dangerous condition that injured plaintiff, and that plaintiff had none.

## III. Argument

A. The jury's verdict that plaintiff bears 80% of the fault for her injury and defendants only 20% is against the clear weight of the evidence and results in manifest injustice.

The jury's verdict inexplicably assigns only 20% of the responsibility for plaintiff's injury to defendants, who were experienced and knowledgeable in all things related to sailing and had actual knowledge of the risk posed by the turning block, and 80% of the responsibility to plaintiff, who has never participated in the sailing of a sailboat, is unfamiliar with sailboats, and had never even been on Heritage before. This badly-skewed assessment of comparative fault is clearly against the weight of the evidence of each party's relative degrees of experience and knowledge, and is the result of passion or prejudice. It is a seriously erroneous result that causes manifest injustice to plaintiff. Therefore, the issue of comparative negligence must be retried.

Plaintiff's theory of liability was that defendants were negligent because they were aware of the danger of the turning blocks adjacent to the cockpit and failed to warn the passengers about the danger. The jury accepted this theory, since they found that defendants were negligent. Thus, defendants' negligence consisted of actually knowing about a dangerous condition and doing nothing to inform unknowledgeable passengers about the danger.

Any negligence of the plaintiff, on the other hand, had to consist of not knowing about the danger, or, more precisely, not acquiring knowledge of the turning block and its danger during the course of the sail before she was injured. The evidence establishes that plaintiff did not know what a turning block is, or the danger it posed, before she was injured. Defendants repeatedly focused on the fact that the turning block would make

some noise when the jib sheets moved through it during a tack, and that the tacking maneuver would be announced by various commands back and forth between the helm and the crew. This evidence was apparently aimed at supporting an argument that these activities should have informed a reasonably prudent person of the presence of the turning block, and that a reasonably prudent person would then deduce how the block operated and then realize the risk of danger it posed. Even if this tenuous argument is accepted, however, the most it does is lead to a conclusion that plaintiff *should have known* of the danger posed by the blocks; it does not lead to a conclusion that plaintiff actually knew about the danger and acted unreasonably with that knowledge, which is precisely what the jury found defendants did when it found them negligent. A negligent lack of knowledge can never be even equally culpable, much less substantially more culpable, than a negligent failure to act reasonably upon known information, but this is just what the jury concluded when it found plaintiff 80% responsible for her injuries. To find her four times more culpable than defendants is clearly a seriously erroneous result and a manifest injustice.

The jury's conclusion that plaintiff bears the much greater share of responsibility for her injuries is also against the clear weight of the evidence of what the other non-sailing passengers on Heritage were doing during the sail, and what they knew or didn't know about the turning blocks. Since defendants claim that plaintiff was negligent because she should have been clued in by the sailing activity on the vessel and should have realized that there was a turning block behind her, the evidence of what the other cockpit passengers were doing and what they were aware of is highly probative on the reasonableness of plaintiff's conduct. In response to a question about whether she could

see the turning blocks from where she was on the vessel, Katherine Boulukos, an experienced sailor, testified that the cockpit was crowded, that the women in the cockpit were conversing and not participating in the sailing, and that they "really weren't paying attention" to the sailing. Duncan MacInnes, also an experienced sailor, testified that he was sitting in the cockpit area, was not participating in the sailing, and wasn't aware that there was a turning block on the deck behind him. Joan MacInnes, another experienced sailor, testified that she wasn't aware of noise coming from the turning blocks, that she didn't remember seeing the turning blocks, and that she thought that the cockpit was a safe place to sit. If other passengers sitting with plaintiff in the cockpit area weren't paying attention to the sailing activities, didn't see the nearby turning blocks or weren't aware that they were there, and weren't aware of noise coming from the turning blocks during tacks, then there is simply no way that plaintiff could be found not to be acting as a reasonably prudent person under the circumstances when she, just like everyone else, wasn't following the sailing activities and didn't become aware of the presence of the blocks. To find that plaintiff failed to act as a reasonably prudent person when the other passengers had the same level of attention and knowledge as she did is against the clear weight of the evidence. To find her four times more culpable than defendants under these circumstances is simply irrational and unsupportable.

Another way of examining the relative degrees of fault here, an analysis that further demonstrates the irrationality of the jury's finding, is to compare what it would have taken for each of the parties to avoid the harm. For plaintiff to have avoided her injury she would have had to directly observe the sailing maneuvers and how the sailboat equipment functioned during the maneuvers, see the turning block and recognize that it

was near the cockpit area, deduce that the turning block was part of the equipment activated during a turn, understand that a line moved through the block when the jib sail changed position, and realize that the line was moving with such force and speed that a hand resting on the block with fingers at the pinch-point between the line and the body of the block could be drawn in and crushed. This is simply too much to expect of a charter passenger who is unfamiliar with sailing and not interested in participating in the sail.

On the other hand, defendants, who already had the knowledge of the blocks that they fault plaintiff for not acquiring, could have avoided the harm completely and easily by taking less than thirty seconds at the beginning of the sail to point out the turning blocks to the passengers and warn them to stay clear of them. Since the effort required of plaintiff to avoid the harm would have been great, and the effort required of defendant slight, it is irrational and contrary to the weight of the evidence to find that she was four times more culpable than defendants.

There is not one scrap of evidence that plaintiff did anything she was not supposed to do during the sail. She stayed in the cockpit area, a proper place for passengers. She was not engaging in horseplay and was not interfering with the operation of the boat. Just before she was hurt, she was sitting or leaning against the edge of the cockpit facing inboard, a position where passengers on Heritage commonly sit, and where others were sitting at the time. She was bracing herself with her arms behind her, something Emily Labnon admits that passengers commonly do when the boat is heeling. It is simply not possible to reconcile the clear weight of this evidence of the reasonableness of plaintiff's conduct with the jury's decision to place 80% of the

blame for her injuries on her. This seriously erroneous result by the jury must be cured by granting plaintiff a new trial on the comparative negligence issue.

B. A new trial is warranted because the issue of whether the turning block was an open and obvious risk of danger that obviated any duty to warn was erroneously submitted to the jury and likely confused the jury on the comparative negligence issue.

Plaintiff objected at trial to the Court's jury instruction entitled "Standard of Care," for the reason that it erroneously delegated to the jury the determination of whether defendants owed a duty of care to plaintiff, when that issue was a question of law that should have been decided by the Court. The basis for plaintiff's position on this issue is set forth in Plaintiff's Supplement to Pretrial Memorandum, filed on February 26, 2008, and will therefore not be repeated here.

The instruction requiring the jury to determine whether the turning block was an open and obvious condition that negates any duty to warn likely confused the jury in its decision on the comparative negligence issue. It placed the question of duty with the jury, where it did not belong. This had the impermissible effect of skewing the jurors' assessment of the comparative negligence balance against plaintiff. The jurors' assessment of the relative degrees of negligence would likely have been much different if they had been instructed that defendant had a duty to use reasonable care to warn plaintiff of known hazards, as opposed to requiring them to decide if defendant owed any duty to plaintiff in the first place. Moreover, deciding that the danger was open and obvious would have the inevitable effect of causing the jurors to assess an unfairly higher level of culpability on plaintiff than if this issue had not been decided by them, because they would likely view plaintiff's failure to see something they had determined to be open and obvious as a failing of significant magnitude. Thus, the instruction allowed the jury

to find that the turning block danger was open and obvious and then improperly use this conclusion as a basis for finding a higher degree of comparative negligence on the part of plaintiff, when the danger of the turning block was not open and obvious as a matter of law.

The instruction also had the effect of improperly focusing the jury on the nature of the turning block and the danger it posed, rather than on plaintiff's and defendants' knowledge and conduct. This opened the door for defendants to go so far as asking their marine surveyor witness to opine that the turning block was an open and obvious danger. The testimony and instruction on this issue had the inevitable effect of falsely magnifying in the jurors' minds the significance of what they may have concluded plaintiff *should have known* about the turning block, while at the same time minimizing the significance of what defendants actually knew and how they acted. There is simply no other rational, evidence-based explanation for how the jury could find plaintiff four times more culpable than defendants.

This improper effect that the erroneous submission of the "open and obvious" issue to the jury had on its resolution of the comparative negligence issue requires a new trial on whether plaintiff was comparatively negligent, and if so, to what extent.

C. <u>Any new trial should be limited to the issue of the existence and extent of plaintiff's comparative negligence</u>.

The authority granted by Rule 59(a)(1) to limit a new trial to fewer than all of the issues originally tried should be exercised here to conduct a new trial solely on the issue of comparative negligence. Whether plaintiff was negligent in addition to defendants, and if so the extent of the negligence, is an issue so distinct and separable from the issues of defendants' negligence, proximate cause, and damages that it can be retried without

causing any injustice to defendants. Significantly, defendants have not moved for a new trial on any of these issues, so there is simply no reason to retry them. Moreover, courts have recognized that the issue of comparative negligence can be retried on its own, without retrying issues of damages or even a defendant's own negligence. Akermanis v. Sea-Land Services, Inc., 688 F.2d 898, 906 (2d Cir. 1982); Liriano v. Hobart Corp., 949 F.Supp. 171, 175 (S.D.N.Y. 1996). This is especially true where, as here, special interrogatories were used in the first trial, which enables "a trial or a reviewing court to be reasonably certain that an erroneous verdict was reached independent of another verdict." Akermanis, 688 F.2d at 906. The special interrogatories show that the jury in this case reached an erroneous assessment of comparative negligence, which was independent of its verdicts on negligence, proximate cause, and damages. Under this circumstance, and because defendants have not moved for a new trial on any of these other issues, it would be unjust to plaintiff to order a new trial on any issue other than comparative negligence, and the new trial should be limited to that issue[1].

## IV. Conclusion

The jury's assessment that plaintiff is four times as responsible for her injury as is defendant is against the clear weight of the evidence and will result in a miscarriage of justice. Any rational assessment of the evidence would have resulted in a conclusion that plaintiff was substantially less responsible for the incident than defendant was, and any finding that plaintiff's negligence exceeded defendant's at all, much less by a factor of

[1] "If this procedure were used, the jury would be told that defendant's negligence has already been determined and that their task is only to determine whether the plaintiff is contributorily negligent and, if so, to determine what percentage of responsibility for the accident is attributable to the plaintiff's contributory negligence. The parties would, of course, be entitled to present all evidence relevant to the fault of both parties in order for the jury to make an apportionment of fault. Akermanis v. Sea-Land Services, Inc., 688 F.2d 898, 907 n. 6 (2d Cir. 1982)

four, is simply indefensible. This Court should therefore order a new trial on the issue of comparative negligence.

LYNN M. SUTHERLAND

By her Attorneys,

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

/S/John S. Foley
John S. Foley Bar #2060

## CERTIFICATION

I hereby certify that I served the within document by electronic filing to the following counsel of record: **Robert E. Collins, Esq.**, rcollins@clinmuzyka.com and **Michael M. Hagopian, Esq.**, michael@mhagopianlaw.com; and by regular mail, postage prepaid, to **Thomas J. Muzyka, Esq.**, Clinton & Muzyka, P.C., One Washington Mall, Suite 1400, Boston, MA 02108 on the 16th day of May, 2008.

/S/John S. Foley
John S. Foley Bar #2060

Sutherland P094